WILLIAM GROSVENOR *et al. vs.* HENRY S. FLINT, *et al.*

PROVIDENCE — APRIL 17, 1897.

PRESENT : Stiness and Tillinghast, JJ.

A lease from A. to B. contained a provision for arbitration at stated times to appraise the amount of rent to be paid by B. to A. for the leased premises ; upon failure to obtain an appraisal in the manner provided :—

*Held,* that a court of equity had jurisdiction to do, either directly or by its master, what the appraisers or arbitrators could have done under said provision, if it be shown that the arbitration has in fact failed.

The above agreement for arbitration provided that the arbitrators should be selected, one by the lessor, one by the lessee, and one by the two so chosen ; the two chosen by the respective parties refused to agree to the third :—

*Held,* that this constituted a failure of the arbitration.

*Held,* further, that in the case stated the manner of determining the amount of rent to be paid is a matter of form, rather than of substance ; and if it appear that it cannot be determined as provided in the lease, because of the failure of one party to do what in equity he ought to do, the court will determine it upon the application of the other party.

*Held,* further, that the above provision in the lease, being in effect an agreement to arbitrate, cannot be specifically enforced in equity.

An arbitration is a judicial proceeding, and the arbitrators, being the agents of both parties alike and not of one party alone, are bound to exercise a high degree of judicial impartiality.

BILL IN EQUITY to determine the rental value of premises

under lease, the arbitration for this purpose provided for in the lease having failed.   Heard on pleadings and proofs.

TILLINGHAST, J.   This bill is based upon the alleged non-performance by the respondents of a covenant in a lease held by them of certain premises owned by the complainants. The lease was given September 11, 1870, and was to run for the term of thirty years.   The covenant in question is as follows, viz. :   The lessees agree to pay rent therefor "yearly and every year during the first five years of said term, the sum of six thousand dollars, and during the subsequent years of said term such sums as may be agreed on or otherwise fixed under the provisions hereinafter contained, said rent to be payable quarterly in equal installments on the eleventh days of December, March, June and September in each year during said term.   And it is agreed between said parties that at or about the expiration of each (except the last) period of five years of said term, the rent of said demised premises for the then next ensuing period of five years, shall be fixed by the award in writing of any two of three disinterested men to be chosen in writing, one by said parties of the first part, their heirs or assigns, one by said parties of the second part, their executors, administrators or assigns, and the third by the two so chosen, and in case either party shall neglect for thirty days after being requested in writing by the other party so to do, to choose an appraiser in manner aforesald, it shall be lawful for such party to choose two of said appraisers, and the two so chosen the third, and the award of either two of the three, in either manner chosen, shall be final and conclusive."

The bill sets out, in substance, that at the expiration of each of the first four periods of five years after the date of said lease, the rent for the then next ensuing period was duly fixed by appraisers chosen in accordance with the provision above quoted, but that at the expiration of the fifth period, viz., September 23, 1895, the respondents neglected and refused to comply with said provision by neglecting to choose an appraiser within thirty days after the complainants had made choice of one, viz., Henry C. Cranston, and had given

due notice thereof to the respondents ; but that shortly after the expiration of said thirty days the respondents notified the complainants that they had chosen Sylvanus N. Lewis as an appraiser. That pending an attempt to agree on a third appraiser said Cranston died, whereupon the complainants chose Addison Q. Fisher as an appraiser, in place of said Cranston, deceased, and notified the respondents thereof. That thereafterwards, after unsuccessful efforts on the part of Fisher and Lewis to agree on a third man, Fisher named six suitable business men of Providence from whom Lewis had the privilege of selecting one, but that he rejected them all, and without any good reason therefor, and insisted that the respondents should have a third man of their own choice.

In view of these allegations, the bill charges that Lewis, acting in behalf and under the direction of the respondents, has been endeavoring to prevent the selection of a disinterested and suitable person as third appraiser, and to procure the selection of some unsuitable person for that position, with a view to an unfair appraisal of said rent. The bill prays that it may be ascertained, by reference to a master, or in such other way as the court may deem proper, what is a fair and reasonable rent for said estate, and for other relief.

The answer denies the allegations aforesaid, in so far as they charge any misconduct or unfairness on the part of the respondents, and on the part of said Lewis, in the premises, and avers that said Lewis suggested the names of several prominent business men who were disinterested, and that said Fisher declined to accept any one of them as a third appraiser. It also sets up, as a matter of law, that the court has no jurisdiction to appraise said rent through its master.

The case is before us on bill, answer, replication and proof.

The case presents two questions for decision, viz.: (1) Whether the court by a master, or otherwise, can appraise the rent payable to the complainants, if the arbitration provided for in the lease has failed ; and (2) Whether, as a matter of fact, the arbitration has failed.

In answer to the first question, we think it is clear that the court has jurisdiction to do, either directly or by its mas-

ter, what the appraisers or arbitrators could have done under said provision of the lease, if it is shown that the arbitration has in fact failed. And refusal to agree to a third man constitutes such a failure. *Brock* v. *Ins. Co.*, 26 L. R. A. 623; *Ins. Co.* v. *Bishop*, 154 Ill. 1; *Brown* v. *Harper*, 54 Ia. 546; *Watson* v. *Duke* of *Northumberland*, 11 Ves. Jr., 153. The covenant to appraise the rent does not stand alone, but is merely a subsidiary part of the lease in question. That is to say : The manner of determining the amount of rent to be paid is a matter of form, rather than substance. And if it appears that this question cannot be determined in the manner provided for in the lease, by reason of the refusal of one party to the contract to do what in equity it ought to do, the court will determine it, upon the application of the other. Substantially the same rule was adopted by this court in *Bristol* v. *B. & W. Water Works*, Index SS. 10. If the lessors are without fault in the premises, and it is by reason of the fault of the lessee that the agreement to arbitrate has become inoperative, it is clear that the former must have a remedy for the wrong and injury thereby sustained. Indeed, it has frequently been held that a failure by arbitrators to agree on an umpire is a sufficient ground for holding that an arbitration has proved abortive, without reference to any responsibility on the part of the party whose arbitrator was at fault. *Bishop* v. *Agric. Ins. Co.*, 130 N. Y. 489, 495; *Lowe* v. *Brown*, 22 O. St. 463; *Cheslyn* v. *Dalby*, 2 Y. & C. 170.

That the specific performance of an agreement, like the one in question, cannot be decreed, seems to be pretty generally held, such an agreement not being simply a covenant to renew at a fair valuation, but being in effect an agreement to arbitrate, and that equity will not specifically enforce such agreements. *Greason* v. *Keteltas*, 17 N. Y. 491 and cases cited ; *Hopkins* v. *Gilman*, 22 Wis. 476 ; *Tobey* v. *Bristol*, 3 Story, C. C. 800 ; 22 Am. & Eng. Encyc. L. 1000, and cases cited in note 4 ; Wat. Spec. Perf. § 44.

If it be suggested that the lessors have a remedy at law against the lessees for damages occasioned by the breach of the covenant to arbitrate, it is sufficient to reply that this

remedy is neither an adequate remedy, nor is it the only remedy in a case of this sort. If the allegations of the bill are sustained by the evidence, the lessors have the right to say to the lessees : "You hold a lease of the premises in question for thirty years. You have agreed to submit the question of the amount of rent to be paid therefor to the determination of three appraisers once in every five years of said term. You refuse to execute the said provision for fixing the rent to be paid. We cannot compel you to perform said covenant, and you cannot, therefore, object to the exercise of the power of a court of equity to fix and determine the rental valuation of the premises which you hold under said lease."

Having thus arrived at the conclusion that the court has jurisdiction in the premises, we next come to the second question above stated, viz., whether the arbitration provided for in the lease has failed. We think the evidence shows that it has. After considerable delay in the matter of the selection of a third appraiser, caused by the respondents, Mr. Lewis, the appraiser chosen by them, refused to agree to any of the men named by Mr. Fisher, the appraiser chosen by the complainants, without giving any good reason therefor, and insisted that the third man should be one selected by the respondents, he stating in substance that the complainants had theretofore had their choice as to third appraiser and now the respondents were going to have theirs. The men named by Fisher were prominent business men of ability and good standing, and were suggested by him without any conference with the complainant, and, so far as shown in the evidence, they were wholly disinterested and suitable men to act as appraisers. Indeed, the respondents admitted at the trial that as to Mr. Charles H. Merriman, one of the men named by Fisher and rejected by Lewis, there was no objection whatsoever, and they *then* offered to accept him as third man. Lewis testifies that he objected to the men proposed by Fisher "*on general principles*;" that the only objection he had to Mr. Sims was that he "wanted a different man"— "a man that I thought would be satisfactory to the other

side." In short, it clearly appears that Mr. Lewis had made up his mind to refuse to accept any man named by the other side as a third appraiser.

The evidence also shows that the men proposed by Lewis, although men of good standing and unquestioned integrity and business ability, yet were so intimately connected with one of the respondents, at least, in social, friendly and professional relations, as to disqualify them to act as appraisers. An arbitration is a judicial proceeding directly affecting the interests of both parties to the submission; *Wood* v. *Helme*, 14 R. I. 329; and the plainest principles of justice require that the arbitrators ought to be indifferent and impartial men both in sentiment and in action. They are the agents of *both* parties alike, and not one party only; Morse Arb. 106; and, like other judges, they are bound to exercise a high degreee of judicial impartiality without the slightest regard to the manner in which the duty has been devolved upon them. Russ. Arb. 3 ed. p. 205. "Like jurors impannelled for the trial of a cause," said Judge Cushing in *Strong* v. *Strong*, 9 Cush. 560, "arbitrators are invested *pro hac vice* with judicial functions, the rightful discharge of which calls for and presupposes the most absolute impartiality." See also *Bradshaw* v. *Ins. Co.*, 137 N. Y. 137. The same general doctrine is recognized in *Flint* v. *Pearce*, 11 R. I. 576; *Cleland* v. *Hedley.* 5 R. I. 163; and *Peckham* v. *School Dist.*, 7 R. I. 545.

We think it sufficiently appears from the testimony that Lewis was acting under the instruction of the respondents in nominating the appraisers selected, he testifying that he and Mr. Flint conferred together about them and that the names which he presented to Fisher were given to him on a paper written, as he thought, by some one in the respondents' office. It also sufficiently appears that, in refusing to accept any of those nominated by the other side, he was acting under similar instructions. We therefore decide that the complainants are entitled to relief as prayed.

*Samuel Norris, Jr.*, for complainants.

*James M. Ripley and John Henshaw*, for respondents.