[S. F. No. 6862. In Bank.—March 13, 1917.]

EDIE W. GONZALEZ, Respondent, v. ANITA C. GONZALEZ, Appellant.

PARTITION—AGREEMENT FOR—PARTITIONERS NOT ARBITRATORS—AGENCY. In the absence of any prior controversy, an agreement between tenants in common for the partition and allotment in severalty of the common property, to be made by three disinterested parties, the determination of the majority of whom was to be binding on the cotenants, is not an agreement for arbitration. The partitioners do not act in the capacity of arbitrators, but merely as agents for the cotenants.

ID.—ARBITRATION DEPENDENT ON PRIOR CONTROVERSY.—An arbitration, strictly speaking, has to do with the settlement of existing controversies between the parties. If there is no question in dispute there is no question for an arbitration.

Id.—Statutory Arbitration—Filing Award—Absence of Hearing.—
The proceeding to partition cannot be supported as a statutory
arbitration, where the award was not filed with the clerk, nor any
hearing held for the purpose of adducing evidence.

Id.—Swearing of Partitioners.—The nature of the partition agree-
ment is not affected by the incident that the persons chosen to make
the partition were sworn in accordance with the provisions of sec-
tion 1285 of the Code of Civil Procedure.

Id.—Equalization of Allotments by Award of Owelty.—In making
the partition, where the common property was not susceptible to an
equality of division in kind, the partitioners could equalize their
allotments by awarding one of the cotenants an owelty.

Id.—Division of Stock in Irrigating Company. — In partitioning
shares of stock in an irrigating company, that had little or no
value to persons who did not own land beneath the ditch of the
company, it was just and reasonable to divide the shares in pro-
portion to the number of acres lying below the ditch and irrigable
therefrom, any inequality of value arising from such a division being
compensated for by an owelty.

Id.—Award of Easement for Way.—In making the partition of a
large tract of agricultural land, the partitioners had implied au-
thority to award one of the cotenants a perpetual right of way
over the lands allotted to the other, such easement being merely
the right to use an existing road which was necessary to furnish
proper facilities for access to the land to which it was appurtenant,
and a reasonable means of making possible a fair and equitable
partition of the property.

Id.—Hearing Before Partitioners not Essential.—Under the parti-
tion agreement in question, a hearing before the partitioners for
the purpose of taking testimony and determining such questions as
the parties might choose to raise, was not contemplated and was
not essential to the validity of the partition.

Id.—Expert Advice Given Partitioners.—It was proper for the par-
titioners, if the nature of the case required it, to obtain from dis-
interested persons of acknowledged skill such information and ad-
vice in reference to technical questions relative to land values and
conditions submitted to them, as might be necessary to enable them
to come to a correct conclusion, provided the partition was the
result of their own judgment after obtaining such information.

Id.—Entertainment Given Partitioners by Cotenant.—The mere
fact that the partitioners were guests of one of the tenants in com-
mon while they were on the property making their investigations,
and discussed with her the matter of the proposed partitionment
prior to the time that the award was made, is insufficient to avoid
the award at the instance of the other cotenant, where they each tes-
tified, and the court found, that neither of them was in any manner

influenced in making the award by any entertainment so provided or courtesy so shown them.

ID.—Specific Performance of Award—Fairness and Justness of Award.—In this action to specifically enforce the award, the evidence is held sufficient to support the conclusion of the trial court that the award as to the defendant was fair, just, and equitable.

ID.—Mistakes of Partitioners in Drawing Conclusions from Facts. Under the provisions of the partition agreement, and in the absence of a showing that the partition was unfairly made, or that the partitioners were guilty of fraud, the award cannot be inquired into for alleged mistakes of the partitioners in drawing conclusions from the facts before them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, for Appellant.

Charles S. Wheeler, and John F. Bowie, for Respondent.

LAWLOR, J.—Appeal from a judgment decreeing specific performance of an award given under two agreements providing for the partitionment of certain realty holdings and personalty in Monterey County.

By virtue of a contest instituted against the will of Mariano E. Gonzalez, deceased, the plaintiff and defendant, who are respectively the widow of the deceased and daughter by his former wife, had become possessed in equal undivided shares of the estate of the deceased, except a certain tract, 9.23 acres in extent, a part of the homestead and constituting the "dwellings and outbuildings and yards about the same," which was distributed absolutely to the plaintiff. The original homestead awarded to the plaintiff in the probate proceedings included about three hundred acres. But subsequent to the commencement of the said contest and prior to the revocation of the probate of the will, the plaintiff and defendant entered into the first of the agreements between themselves, dated March 13, 1909, whereby it was agreed, among other things, that the parties thereto should petition "for the final distribution of all of the estate of the said deceased [including the said homestead except for the nine-acre tract referred

to] to the parties hereto, share and share alike." The will was revoked, and the decree distributing the property to the plaintiff and defendant in accordance with the agreement was duly entered on April 5, 1909. One of the objects of the agreement was to give to the parties equal rights to the homestead. It was thus provided in the agreement that in the event the will was adjudged invalid, the remaining portion of the homestead should be either "partitioned into two parts of equal value"; or a portion of the estate adjacent thereto and of equal value should be set apart to the defendant; or the homestead tract should be "appraised at its fair market value," and that the plaintiff should pay the defendant one-half of this amount. The plaintiff, who was given the right to elect the method to be ultimately employed, decided to retain the land embraced in the homestead, thereby having the property partitioned in accordance with the provisions of the second alternative. That provision, stated in full, is as follows:

"(2). Property adjacent to the property included in the said homestead, of equal value and like quantity thereto, exclusive of the property above excepted shall be set apart absolutely to the party of the second part [referring to the defendant], and the property included in the said homestead shall be set apart absolutely to the party of the first part [referring to the plaintiff]."

For the purposes of setting apart the property, it was provided in the agreement that three "arbitrators" should be chosen. The plaintiff selected Warren R. Porter, the defendant Robert F. Johnson, while these two chose Wellington Gregg, Jr. It was further provided that, "The arbitrators shall forthwith proceed to make such partition, such setting apart, or such appraisement, and the determination of any two of the arbitrators upon any matter submitted to them, shall be binding." But thereafter on July 19, 1909, and before the "arbitrators" had completed their work, the plaintiff and defendant entered into the second agreement referred to, whereby the "arbitrators" were directed also to "partition and divide between the parties hereto and . . . set off to each of the parties in severalty" one-half of the remaining real estate, "quality, quantity and improvements considered," consisting of about six thousand acres of farming and grazing land, various lots in a town known as Gonzalez and certain personal property consisting of seventy shares of the capital

stock of the Gonzalez Water Company, farming implements, vehicles, household furniture, and the like. A plan of partition embracing all the property covered in the two agreements was submitted on February 25, 1910, which was concurred in by Porter and Gregg. Although the parties had agreed that they "shall execute such instruments of conveyance, one to the other, and shall do such other things as shall be necessary to carry into force and effect said award," the defendant refused to abide thereby, whereupon the plaintiff brought her action for specific performance. Evidence was introduced at the trial on behalf of both parties, and the court, having viewed the real property at the request of the defendant, rendered judgment for the plaintiff decreeing specific performance as prayed. The defendant appeals from the judgment and the order denying her motion for a new trial.

It is contended by the defendant that the judgment and order must be reversed for the following reasons:

"1. An award must conform strictly to the submission. The arbitrators were without authority to divide the land unequally, allowing compensation to the one receiving the smaller portion, or to divide the shares of stock unequally, or to burden one portion with an easement in favor of the other.

"2. The court erred in enforcing an award reached by arbitrators who refused the defendant the right to a hearing and to adduce evidence.

"3. The award is void because of the gross misbehavior and neglect of the arbitrators.

"4. A court of equity will not enforce specifically an award unless the plaintiff proves that it is just and reasonable. This the plaintiff failed to do."

These objections explain themselves. They will be considered in the order stated.

1. But first it is necessary to determine in what capacity the three persons selected to set apart and partition the property were expected to serve, whether as arbitrators in the strict sense, or merely as agents of the parties appointed to divide the property on their behalf. It is the theory of the defendant that they were arbitrators who were bound to exercise such authority as is common to arbitrators strictly in accordance with the rules prescribed by law for the arbitration of controversies. But the proceeding in this case was not based upon a prior controversy. At the time the first agree-

ment for the division of the property with reference to the homestead was made, the parties were laboring under no dispute—indeed, they had no certain knowledge that they would prevail in the contest for the revocation of the will, and that there would be any property to be divided between them. And there is nothing to suggest that any dispute had arisen prior to the entering into of the second agreement. A reasonable inference may be drawn from the facts that the object of the parties was rather to prevent future disputes, than of settling existing ones. The court found: "That at the time the parties to this action entered into the contracts . . . no difference or dispute existed between them, nor had they themselves made any attempt to divide the properties therein mentioned between themselves." Yet, "the decided weight of authority is to the effect that an arbitration, strictly speaking, has to do with the settlement of existing controversies between parties. If there is no matter in dispute, there is no question for an arbitration." (5 Cor. Jur. 27, sec. 25.) That the proceeding to partition the property cannot be supported as a statutory arbitration is further apparent. It does not appear that the award of the alleged arbitrators was filed with the clerk of the court as provided by the code (Code Civ. Proc., sec. 1283), although the contracts provided that the award "shall be binding," and "may be enforced by either of the parties hereto by proper judicial proceedings." Nor was any hearing held for the purpose of adducing evidence. (Code Civ. Proc., sec. 1287.)

On the other hand, an examination of the evidence, and a study of the situation of the parties leading to the making of the agreements, convinces us that this is nothing more than a reference to disinterested persons. While there is little authority on the subject of effectuating a partition by such means, there are numerous instances where the practice has been followed. Allnatt points out that Littleton, in enumerating the various methods of arranging and choosing the shares on a partition of coparceners, gives the second as "where they chose certain friends to make partition of the lands or tenements." (Allnatt on Partition, ed. 1820, p. 14; Litt., sec. 243.) "I have reason to know," Allnatt further states, "that in many instances where several persons have been entitled to lands, as tenants in common, in fee, or have been proprietors of waste grounds, in respect of different

farms, etc., of which they were seised in fee, the only steps taken for the purpose of effecting a partition, have been, to enter into a deed of covenant, to refer the partition and allotment to the arbitration of some indifferent person.'' It is said by Freeman: ''A deed of partition may appoint certain persons as commissioners to make a division of the lands therein described, and to allot the same among the cotenants according to certain terms specified in the deed.'' (Freeman on Cotenancy and Partition, 2d ed., sec. 395.) In *Phelps* v. *Harris,* 101 U. S. 370, 383, [25 L. Ed. 855], the court, approving the action of a trustee in leaving a division of certain properties to others, makes the following pertinent comment: ''And it seems to us that the intervention of disinterested persons for appraising the property and making the allotment was judicious and proper. It is the course most commonly pursued by those who desire to make a division of property.'' (See, also, *Emeric* v. *Alvarado,* 64 Cal. 529, 569, [2 Pac. 418]; *Tewksbury* v. *Provizzo,* 12 Cal. 20.) Such a proceeding is not necessarily an arbitration, although there may be circumstances where, through a controversy as to the proper division to be made of the property, or otherwise, a partition may be properly made the subject of arbitration. (Code Civ. Proc., sec. 1281.) It is rather analogous to that of an appraisement or a valuation of property (see *California Annual Conf. of M. E. Church* v. *Seitz,* 74 Cal. 287, [15 Pac. 839]), the distinguishing feature being that after the value of the property has been determined, it is necessary that it be divided or set apart so as to bring about a separation into two parcels according to the terms of the agreement of submission under which the award is to be made. Nor is this conclusion affected by the incident that the persons chosen to make the partition were sworn in accordance with the provisions of section 1285 of the Code of Civil Procedure. ''As partition by act of the parties rests on their agreement, it is obvious that they may resort to any method which to them seems best, and that it must be impossible to specify all the methods that may be resorted to, for human ingenuity may devise ways not hitherto employed and which nevertheless satisfy all the interested parties.'' (30 Cyc. 154.) To iterate, the parties here, instead of endeavoring to divide the estate among themselves, agreed to effectuate the partition by selecting three disinter-

ested persons, hereafter referred to as the partitioners, to determine the matter for them.

2. As to defendant's first contention, it is shown that the partitioners did not actually make an equal division of the tract of land, but awarded to the defendant an owelty of $3,304. From the earliest times the power to award owelty has been regarded as necessary to the act of partitioning property, for, as said in 30 Cyc., page 261, speaking generally of the nature of the right, "it is not essential, and in truth it can rarely be proper, even where the interests of two or more are equal, to allot each an equal part." In the year 1682 a case is reported where coparceners, making a partition, expressly agreed upon an owelty of partition. (*Hulbert* v. *Hart,* 1 Vern. 133.) In *Lacy* v. *Gard,* 60 Ill. App. 72, a father possessing two tracts desired to arrange a partition between his children and grandchildren. "He selected three neighbors, requested them to view the premises and suggest to him a fair and equal division." Yet, as to one of the tracts, their report was that it be divided into *unequal* parcels, "and that the difference in value should be equalized by requiring the party to whom it should be allotted to pay the sum of $300 to the persons to whom the other twenty-acre parcels should be given." Also in *Long* v. *Long,* 1 Watts (Pa.), 265, a partition was made by "certain persons appointed for that purpose," and apparently without express authority being given, owelty was awarded. The rule is thus laid down: "Partition among the parties is usually effected by the division of the property into as many portions as there are cotenants, such portions being as nearly equal as possible, and the allotment of one of such portions to each of the cotenants. And in case of any considerable inequality between the shares it is usual for those cotenants who receive shares of a lesser value to receive a payment from those receiving the more valuable shares, which payment is termed owelty." (21 Am. & Eng. Ency. of Law, 2d ed., p. 1135.) It is also stated: "In making a voluntary partition, or a partition by parol agreement, the parties may agree for the payment of owelty to equalize the shares." (Id., p. 1183.) That the parties could have expressly delegated such a power cannot be questioned. This was recognized by Freeman: "The power which every cotenant has of joining with his companions in interest in making a partition of the common property, may,

no doubt, be delegated by him to another; and when so delegated, it may be exercised by the agent as effectually as it could be exercised by the principal.'' (Freeman on Cotenancy, sec. 417.) And with equal force the delegation of such power may under proper circumstances be implied.

It is reasonable to infer that the parties here knew the character and extent of the property to be divided. The maps contained in the record and other evidence show the estate to consist of three irregular tracts, separated by the Salinas River and the Southern Pacific Railroad, but practically surrounding the town of Gonzalez, the whole embracing 6,263.25 acres which consist for the most part of farming land, pasturage, and alfalfa fields, marked by numerous canals, roads, fences, hills, and ravines and occupied at various points by dairy-houses, farm buildings and other structures. Porter testified: ''From my standpoint, it was physically impossible to divide that property justly acre by acre, share by share, of the land, and do justice to both parties. It can't be done, I think, owing to the topography of the country.'' The award itself states that the land could not be divided between the parties in such a way as to equalize the differences in value ''without injury to the same.'' The court, having personally viewed the property, made the following findings: ''That the property to be divided could not have been partitioned in kind with absolute equality between the parties, quality, quantity and improvements thereon considered, without detriment to the interests of the owners, for the character of said property was such that the best interests of both of the parties require that some inequality exist in the partition thereof, and that the difference be equalized by a monetary payment; . . . that in view of the subject matter to which said contracts related, it was reasonable and conformable to usage to imply therefrom an authority and power in the parties thereby appointed to equalize comparatively slight and necessary inequalities of value in a division of the property, by pecuniary compensation, and such implication is incident to said agreements and is necessary to carry them into effect, and to make possible a fair and equitable partition of the said property.'' From these considerations, we think it is reasonable to imply from the agreements the power to award owelty, and as the sum awarded herein is but a trivial amount com-

pared with the total value of the property, the award thereof
must be upheld.

The partitioners did not divide the seventy shares of the
capital stock of the Gonzalez Water Company share by share,
but divided them according to the acres of land lying below
the irrigation ditch belonging to the Water Company. The
court found that although the ownership of the shares was,
in fact, severable from the ownership of the land, the stock
was of little or no value to persons who did not own land be-
neath the ditch of the Water Company, as a share of stock
merely entitled the holder thereof to receive water on land
below the ditch, and that it was just and reasonable in fur-
therance of the intention of the parties that the shares be
divided in proportion to the number of acres lying below the
ditch and irrigable therefrom. The court also found: ''That
the inequalities of value so existing when said properties are
considered as deprived of the rights to water incident to the
said water stock, are fully and fairly corrected and compen-
sated for by the award of said water stock as the same has
been made, and the allowance and direction for payment to
said Anita G. Gonzalez of the sum of $3,304.00.'' These find-
ings are not only supported by the evidence, but obviously are
in accord with the intention of the parties to partition the
property as an entirety. Indeed, it cannot be assumed that
the parties otherwise would have found it advisable to sub-
mit seventy shares of stock to third persons in order to obtain
an equal division thereof.

The defendant also contends that the partitioners exceeded
their authority in that they awarded a perpetual right of way
to the plaintiff over the lands allotted to the defendant, not-
withstanding no such authority was expressly conferred by
either of the contracts of submission. There is evidence to
show that the way or easement was merely the right to use an
existing road which was necessary to furnish proper facilities
for access to the land to which it was appurtenant, and there
were findings that it was reasonable and conformable to usage
to award the right of way under the circumstances shown, in
order to make possible a fair and equitable partition of the
property. It is our opinion that the intention of the parties
to vest the partitioners with such authority must be implied,
not only from the facts shown, but under the provisions of
the Civil Code which implies all things in law which are con-

sidered incidental to a contract, and necessary to carry it into effect. (Secs. 1655, 1656.) "Though it is not usual to create an easement over another person's land, yet it is otherwise when a separation of property takes place, and it is necessary that a certain part of it should be assigned to a person who cannot have the use of it without a right of way." (*Lister* v. *Lister*, 3 Younge & C. 540.)

3. The second point raised by the defendant is obviously based upon the theory that the proceeding for the partitionment of the property is a statutory arbitration. It cannot be questioned, under the facts, that the partitioners did not grant the parties an opportunity for a hearing or the right to adduce evidence. After they had determined upon the award, Gregg sent a letter to the defendant to attend at a certain meeting if she wished to be heard. But subsequently it was decided by Porter and Gregg to sign the award without further consideration. We do not think, however, that a hearing before the partitioners for the purpose of taking testimony and determining such questions as the parties might choose to raise, was anticipated by the parties, or embodied in the terms of their agreements. Porter stated that the question of hearing evidence was never suggested to him by anyone prior to the meeting referred to. Gregg testified to like effect. Rather the plain import of the contracts was that the three persons to be selected should go upon the land, make the necessary investigations, and otherwise inform themselves so they might be able to make a fair division of the property. There is, in fact, no provision in either of the agreements calling for any hearing, and we can conceive of no reason why, if the parties should choose to leave such matters wholly to the judgment of the three persons to be selected, they should not be permitted to do so. Such was the procedure which was followed in *Casstevens* v. *Casstevens*, 227 Ill. 547, [118 Am. St. Rep. 291, 81 N. E. 709], where three disinterested persons "sometimes in the record called 'arbitrators' and sometimes 'commissioners'" went upon the land and decided how the property should be allotted. This was the procedure followed herein, and elaborate plans were prepared by the partitioners in their effort to arrive at a just and equal division. Each of them made personal inspection of the property. Porter and Gregg, who concurred in the award, prepared, or had prepared under their supervision, elaborate drawings showing the

location of the various parcels of land and indicating the proposed plan of partition. It is obvious that the parties, not contemplating a formal hearing, desired to leave the whole matter to the skill and unbiased judgment of the three persons who were to be selected to make the partition. Referring to a case of valuation or appraisement, it was said in *California Annual Conf. of M. E. Church* v. *Seitz*, 74 Cal. 287, [15 Pac. 839], ''Certainly, if parties expressly say in their agreement that the 'arbitrators' are to determine the question upon their own skill and judgment without examining witnesses or hearing arguments, there could be nothing to prevent such agreement from being carried out. And if this can be expressed, it can in a proper case be implied.'' (See, also, *Bottomley* v. *Ambler*, 38 L. T., N. S., 545; *Hall* v. *Norwalk Fire Ins. Co.*, 57 Conn. 105, [17 Atl. 356].) As is said in the first of the two cases last cited: ''Considering the position and experience of the three gentlemen who were appointed, it may well be that they were perfectly qualified to decide the matter themselves. In such a case as this the arbitrators are not arbitrators in the sense in which arbitrators are appointed in an ordinary case, when they are appointed to ascertain facts and apply the law to the facts brought them on evidence.'' While these are cases of appraisement or valuation, there is no difference in principle between them and the case before us.

4. In support of the defendant's third main contention that the award should be vitiated because of the misconduct of the ''arbitrators'' two minor points are raised. It is contended that the partitioner Gregg did not sufficiently familiarize himself with the extent and character of the property to be partitioned, by personal investigation or inspection, but left the major part of this work to Harry R. Verrue, who was selected by him as an expert on land values. It appears that Verrue devoted much labor and time carefully considering the matter, personally going over the land, and otherwise determining the most advisable manner in which the partitionment could be made. He submitted his report to Gregg, who discussed the matter with his colleagues, and then the award was made. Gregg testified as to the employment of Verrue as follows: ''The conclusion embodied in the award is one I reached on my own account. In reaching that conclusion I had employed Mr. Verrue. After visiting the property, I thought it would be well to have the opinion of a man who

was well versed in the valuations and conditions of the land in that county, and knowing that Mr. Verrue had considerable experience I engaged him for that purpose. I paid him personally.'' The court's findings on this point are, in part, as follows: ''That said Warren R. Porter and Wellington Gregg, Jr., examined the property to be set apart and the property to be divided, and did devote such time to the performance of their duties as was reasonably necessary in order to arrive at an accurate, fair and just conclusion. . . . That said Warren R. Porter and Wellington Gregg, Jr., who signed said award, correctly informed themselves concerning the quantity, quality, improvements and values of said properties.'' It is noteworthy that Porter's plan of partitionment, prepared independently of that made by Gregg with Verrue's assistance, differed only in minor details from that of Gregg's. The award was based on these two plans, as Johnson's plan was found to be, in the opinion of the other two partitioners, unsatisfactory. The court also found ''that the award actually made was the product of individual judgment and study of said Warren R. Porter and Wellington Gregg, Jr.'' It cannot be doubted that the partitioners, in the performance of their duties, represented the parties in a fiduciary capacity. They were selected because of the confidence the parties reposed in their personal integrity, discretion, and ability, and were intrusted with special powers of agency. There is abundant reason why this trust should not be delegated. Yet it has been said: ''But it is entirely proper for arbitrators, in a case requiring it, to obtain from disinterested persons of acknowledged skill such information and advice in reference to technical questions submitted to them, as may be necessary to enable them to come to correct conclusions, provided that the award is the result of their own judgment after obtaining such information.'' (1 Mechem on Agency, 2d ed., sec. 310. See, also, *Simons* v. *Mills*, 80 Cal. 118, [22 Pac. 25]; *Phelps* v. *Harris*, 101 U. S. 370, 383, [25 L. Ed. 855]; *Emery* v. *Wase*, 5 Ves. Jr. 846, [31 Eng. Rep. 889].) With equal force, similar comment may be made regarding partitioners in the situation presented here.

The other point made to the effect that the award is void is based upon the fact that both Porter and Gregg were guests of the plaintiff while they were on the property making their investigations, and that Porter, at least, discussed with her

the matter of the proposed partitionment prior to the time that the award was made.  The partitioners both denied that either of them was in any manner influenced in making the award by any entertainment provided or courtesy shown by the plaintiff.  This was the finding of the court.  It is evident that such conduct on the part of the partitioners selected to divide the land in which the plaintiff was directly interested, should be scrutinized with care.  But we think the facts here are insufficient to even raise the suggestion that the two persons were prejudiced against the defendant by the hospitality of the plaintiff, or that the fairness of their award was in any way affected by it.  The finding of the court cannot therefore be disturbed.  Were they to be regarded as arbitrators our conclusion might be otherwise in view of such authorities as *Grosvenor* v. *Flint,* 20 R. I. 21, [37 Atl. 304], and *Robinson* v. *Shanks,* 118 Ind. 125, [20 N. E. 713], for arbitrators are clothed with much of the dignity and attributes of courts, and must exercise their authority with the utmost propriety and caution until they have completely executed their trust.  But partitioners do not exercise judicial functions in the same sense as arbitrators.  They are, as we have seen, special agents of the parties, rather than *quasi*-judicial officers.  What is said here, however, does not necessarily apply to referees appointed by a court to divide or partition property between the litigants before it.  In the absence of proof of partiality, or circumstances from which partiality may be inferred, the award must be upheld.

The defendant contends that the findings of the court that the "arbitrators" were selected because of their skill and experience, and that they did inform themselves as to the quality, quantity, improvements, and values of the property, are not sustained by the evidence, but from what has been said, it is clear that the contention is without merit.

5. The final objection, that the plaintiff is not entitled to specific performance because there was no proof that the award was as to the defendant just and reasonable, is equally untenable.  The evidence supporting the award is full and complete, consisting, as it does, not only of various maps, testimony by the partitioners and various experts, but in addition the court personally viewed the property.  While there is some conflict in the evidence, and although it may be claimed that many of the facts testified to support the de-

fendant's argument that the land awarded the plaintiff, notwithstanding the owelty, was worth more than that awarded the defendant, the court has found otherwise, and we cannot disturb that finding. The lower court, in fact, has resolved the mass of evidence in favor of the plaintiff, and has satisfied itself that the award was fair, just, and equitable. Moreover, the contracts, by their express terms, provide that the award shall be binding upon the parties, and it is admitted in the answer that the contracts themselves were just and reasonable. The provision reads: "The said parties further mutually covenant and agree each with and to the other that forthwith upon the making by the said arbitrators of the partition and award herein provided to be made by them, each will execute and deliver to the other a grant, bargain, and sale deed of the portion of the above-described lands so awarded to such other, and will receive from such other party a grant, bargain, and sale deed of the portion of the above-described lands so awarded to her, and shall do such other things as shall be necessary and proper to carry into force and effect the said award. The award of the said arbitrators shall be in writing signed by said arbitrators or by a majority of them, and the determination of any two of said arbitrators upon any of the matters herein submitted to them shall be binding, and the said award may be enforced by either of the parties hereto by proper judicial proceedings." Inasmuch as there is no showing that the partition was unfairly made, or that the partitioners were guilty of fraud, the award cannot be inquired into for alleged mistakes in drawing conclusions from the facts before them, and the parties must be held to the terms of their agreements. (See *Utah Construction Co.* v. *Western Pac. Ry. Co.*, 174 Cal. 156, [162 Pac. 631]; *Dore* v. *Southern Pac. Co.*, 163 Cal. 182, 196, [124 Pac. 817].)

No other points require notice.

Judgment affirmed.

Henshaw, J., Lorigan, J., Melvin, J., and Angellotti, C. J., concurred.

SLOSS, J., Dissenting.—I dissent. Without regard to other points made, I think it should be held that the trial court erred in enforcing the award, made, as it was, by the

arbitrators without giving the defendant notice of any hear-
ing, or the opportunity to be heard or to introduce evidence.
It appears that Messrs. Porter, Johnson, and Gregg made in-
dependent examinations of the property, and prepared sepa-
rate plans for partitioning the land.   The differences between
Porter's plan and that of Gregg were harmonized at confer-
ences between them.   All of this consumed a number of
months, during which there was some informal discussion be-
tween counsel for the two parties with reference to the pro-
posed partition, but no agreement was ever reached.   Finally,
on February 24, 1910, Mr. Gregg addressed a letter to the de-
fendant, Miss Gonzalez, and Charles W. Slack, Esq., her
attorney, informing them, on behalf of his colleagues and
himself, that a meeting of the arbitrators would be held on
the twenty-fifth day of February, 1910, at his, Gregg's office.
It is interesting to note that at this time the arbitrators en-
tertained the view that the granting to the parties of a hearing
was, if not a matter of strict legal right, at least within the
proprieties of the situation.   Mr. Gregg's letter concluded
with these words: "If you desire to be heard further in the
said matter, please be present 11 o'clock."   At the time and
place specified, Mr. Slack appeared on behalf of Miss Gon-
zalez, stated, in effect, that she was dissatisfied with the pro-
posed partition, and requested an opportunity to present evi-
dence to show that a division of the lands on the basis which
had been suggested would not be equal, and would be unjust
to Miss Gonzalez.   Notwithstanding this request, made in an-
swer to their own invitation, Messrs. Porter and Gregg deter-
mined that no evidence should be heard, and proceeded at
once to sign the award which had been prepared.

If the agreement of July 19th provided for an arbitration,
it is plain—and this is conceded by the majority opinion—
that the arbitrators could not render a valid award without
giving to each of the parties notice of a hearing, and an oppor-
tunity to present evidence.   These rights are of the very es-
sence of an arbitration.   (*Curtis* v. *Sacramento,* 64 Cal. 102,
[28 Pac. 108] ; 5 Cor. Jur. 84.)   "There are two time-
honored rules in relation to arbitrators—one that courts will
not enforce an agreement to submit to arbitration, or in other
words, that it can be revoked; and the other that arbitrators
must give notice of their sessions so as to afford the parties
a right to be heard.   These rules rest upon the same idea,

viz., that an arbitration is a substitute for proceedings in court. It being considered against sound policy to allow parties to deprive themselves of their right of resort to the courts, agreements to that effect are not binding so long as they are executory; but if the parties choose to resort to other tribunals, such tribunals are held to the more important rules which govern courts in their proceedings." (*California Annual Conf. of M. E. Church* v. *Seitz,* 74 Cal. 287, 291, [15 Pac. 839].) Not every difference of opinion between parties is, however, a proper subject for arbitration. A contract by which the value of property is, for the purposes of the contract, to be fixed by designated persons, is not a submission to arbitration. (*California Annual Conf. of M. E. Church* v. *Seitz, supra; Dore* v. *Southern Pacific Co.,* 163 Cal. 182, [124 Pac. 817].) But the agreement in the present case goes far beyond this. The question submitted for determination was not merely one of valuation or appraisement. It involved the partition of lands owned in common, and the allotment, to each of the parties, of a portion of the land in severalty. The result of the arbitration was to divest each party of title to a part of the premises, and to vest sole ownership thereof in the other. Such partition is a proper subject for the determination of a court, and we see no reason for holding that when it is committed to the determination of persons selected by the parties, the resulting proceeding does not constitute a true arbitration.

It is said that there was no controversy between the parties, and therefore no basis for a submission to arbitration. The court found that when the parties entered into the second agreement, "no difference or dispute existed between them, nor had they themselves made any attempt to divide the properties therein mentioned between themselves." No doubt the existence of a controversy or dispute is a prerequisite to a submission to arbitration. (5 Cor. Jur. 27.) But this does not mean that actual litigation between the parties shall have been commenced or threatened, or that they must have engaged in an acrimonious quarrel. It is enough if either of them asserts a right which requires judicial ascertainment and enforcement. For the purposes of the rule, the right of cotenants, who have not agreed upon a division of their property, to have the same partitioned presents a sufficient controversy to furnish a basis for submission and award. (*Brown*

v. *Wheeler,* 17 Conn. 345, [44 Am. Dec. 550].)    Section 1281 of the Code of Civil Procedure provides that "persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them. . . . " If a submission to arbitration has its essential basis in a controversy, so, too, does a civil action between parties presuppose a controversy which furnishes the occasion for setting the judicial power in motion.    The "controversy" contemplated by section 1281 is one which "might be the subject of a civil action."    A complete case for partition by civil action is made out when "several cotenants hold and are in possession of real property," and any one of them desires a partition.    (Code Civ. Proc., sec. 752; *De Uprey* v. *De Uprey,* 27 Cal. 329, [87 Am. Dec. 81].)    Each cotenant is entitled to demand partition as a matter of right.    (Freeman's Cotenancy and Partition, sec. 424.)    It is not necessary that the other cotenants or any of them shall have objected to a partition.    It is enough that the parties in interest have not agreed upon a division between themselves.    (See *Frankfurth* v. *Steinmeyer,* 113 Wis. 195, 203, [89 N. W. 148].)    That they had not so agreed in this case is apparent from the very fact of their entering into the agreement for submission.

Section 1281 of the Code of Civil Procedure, after excluding from arbitration questions of title to real property in fee or for life, goes on to provide that "this qualification does not include questions relating merely to the partition or boundaries of real property."    This is, in effect, a declaration that the partition of real property is a proper subject for arbitration.    And such appears to be the view taken by the supreme court of Wisconsin under a similar statute.    (*McCord* v. *Flynn,* 111 Wis. 78, [86 N. W. 668]; *Frankfurth* v. *Steinmeyer,* 113 Wis. 195, [89 N. W. 148].)

The right to notice and hearing may no doubt be waived. But I find nothing in the conduct of the appellant, or in the language of her agreement, which can support a finding of such waiver.    The agreement itself is silent on the subject. If the parties contracted for a submission to arbitration, properly so called, the right to notice and hearing are implied unless expressly waived by the terms of the submission.    (*Curtis* v. *Sacramento,* 64 Cal. 102, 106, [28 Pac. 108].)    "A right so valuable to the parties and so essential to the accomplishment of justice, should not, in any case where the language, upon

which the claim of waiver is based, is doubtful or equivocal, be held to have been surrendered. Nothing short of plain and clear words should be considered sufficient for that purpose.'' (*Hart* v. *Kennedy*, 47 N. J. Eq. 51, 61, [20 Atl. 29]; 5 Cor. Jur. 84.)

For these reasons, I believe that the decree enforcing the award should not be sustained.

Shaw, J., concurred.

Rehearing denied.