**Mary Austin ROSE and Hugh Rose, Plaintiffs-Appellants,**

**v.**

**William B. MOORE and Barbara Boyce Moore, His Wife, and James Handy Moore and Dorothy Matthews Moore, His Wife, Defendants-Respondents.**

**No. 50252.**

Supreme Court of Missouri,

Division No. 2.

April 13, 1964.

Blanton & Blanton, Sikeston, for plaintiffs-appellants.

Ward & Reeves, Caruthersville, for defendants-respondents.

HENRY J. WESTHUES, Special Commissioner.

On March 13, 1962, Mary Austin Rose and her husband, Hugh Rose, filed a petition seeking a partition of land located in Scott County, Missouri. The defendants named were William B. Moore and his wife, Barbara Boyce Moore, and James Handy Moore, and his wife, Dorothy Matthews Moore. The defendants filed an answer and counterclaim wherein it was alleged that previous to the filing of the partition suit the parties had entered into a written agreement to partition the land; that in reliance upon the agreement, the parties, plaintiffs and defendants, had taken possession of the land apportioned to them and had made improvements thereon. Defendants asked for specific enforcement of the agreement. In a second count of the counterclaim, defendants asked for a judgment for a portion of the expenses incurred in carrying out the partition agreement.

In a reply, plaintiffs set forth various reasons the agreement was not binding. The principal reason relied on was that the agreement had not been finally completed.

The trial court entered a judgment for the defendants and decreed specific performance. The court, on the second count, entered judgment against plaintiffs for $300.00. Motion for rehearing was overruled and plaintiffs appealed.

■ In their brief, respondents questioned the jurisdiction of this court on the theory that the sole question in dispute is the right to partition. We cannot agree. Respondents asked for specific performance and the court granted that request. The court decreed title to ¾ of the land to be vested in Mrs. Mary Austin Rose and ¼ in James Handy Moore and William B. Moore. It is apparent that title to real estate is involved. Thus, jurisdiction is in this court.

The land in question, known as the "Sikeston Ridge" or the "Steve Hunter" farm contains, according to the decree of the trial court, "893.14 acres, more or less." It is located about two miles north of Sikeston in Scott County, Missouri. We shall refer to it as the "Hunter Farm." It was agreed that, upon the death of a great uncle in 1961, the plaintiff Mary Austin Rose and the defendants William B. Moore and James Handy Moore came into possession of the Hunter Farm as owners in fee. It was agreed that plaintiff Mary Austin Rose was the owner of a ¾ undivided interest and the defendants, the Moore brothers, a ¼ interest.

We shall refer to plaintiff as Mrs. Rose and to defendants as the Moore brothers.

Soon after Mrs. Rose and the Moore brothers became the owners of the Hunter Farm, they began negotiations in an effort to settle the estate between them. These negotiations resulted in a contract whereby it was agreed in substance that the land should be divided in two parts; that the larger part should be worth approximately three times the value of the smaller part. Mrs. Rose was to appoint a representative and the Moore brothers were to appoint a representative. These two were to agree on a third man who was to act in case the two could not agree. The division of the land as made by the "arbitrators" was to be binding on all parties. The agreement (Exhibit 1) further provided that:

"It is understood and agreed that neither party is seeking an advantage and that the parties hereto are seeking a fair, friendly and equitable division of the property which will best preserve the joint value.

· "The parties hereto agree to allow the arbitrators and the umpire free action in their deliberations, and to take no part in such deliberation unless requested to do so by mutual agreement of the two arbitrators."

The agreement was signed by the parties on August 21, 1961. Pursuant to that agreement, Mrs. Rose appointed James M. Wallace and the Moore brothers appointed Manuel Drumm, a lawyer. These two men, referred to in the agreement as "arbitrators," selected Harvey Drake to act as "umpire" in case he was needed. He was not asked to perform any duty. Wallace had had much experience in land values. He was acquainted with the Hunter farm and had had many dealings with plaintiff and her father, Harry G. Austin, who prepared the agreement (Exhibit 1). Drumm, a lawyer, had represented the Moore brothers. He testified that he was "relatively inexperienced in the appraisal of farm lands."

The evidence shows that the two arbitrators made a determined effort to do justice to all parties. They spent some time in valuating the various tracts of land. It was agreed by them that the Moores should have their share in the northern part of the tract and that Mrs. Rose, the southern ¾ of the tract. Wallace testified as to the value of the land and the improvements thereon. He stated that the southern ¼ was worth about $450 per acre, the north ¼ about $400 per acre, and the middle portion about $425 per acre. He estimated the improvements on the southern ¾ portion to be about $34,700 and on the north ¼ about $3,000. So, it was agreed to give the Moore brothers in excess of the ¼ of the acreage to make up for the difference in value. The arbitrators worked on the basis that the entire tract contained 862 acres of farm land. The documents used in connection with their calculations were an aerial photograph of the land, referred to in the evidence as Exhibit 6; a survey of the land, Exhibit A, made in January 1939, by Lyman Harrison and approved by R. L. Harrison,·

surveyor of Scott County, Missouri; and, of course, Exhibit 1, the contract or agreement signed by Mrs. Rose and the Moore brothers. Wallace and Drumm reduced to writing their agreement as to the division of the land. It is important to note its provisions so we set it out in full, as follows:

### "MEMORANDUM
#### "September 12, 1961

"1. It is agreed that the Sikeston Ridge Farm may be divided into two parcels of which one parcel is to represent a one-fourth interest, which is the interest of J. Handy Moore and William Moore and the other parcel involved is to represent three-fourths interest and is the property of Mary Austin Rose.

"2. It is agreed that the property composing interest of J. Handy Moore and William Moore shall be as follows:

"(a) Said land shall lie generally at the North end of said farm.

"(b) Beginning at the most Northwesterly corner of said farm and running thence South along the property line of said farm to a point where the West property line intersects with a fence, which will be identified as being the fence which runs along or through a grove of Black Locust trees; thence in a generally Easterly direction along said fence along the side or through said line of Black Locust treet to the Railroad right-of-way; thence South along the Easternly most line of said Railroad right-of-way for an unidentified distance, which said distance will be identified by the provisions of Paragraph 3; from the aforesaid point on said Railroad right-of-way line Easterly along a line parallel to North property line to the West right-of-way line of Highway 61; thence Northerly along said Westerly right-of-way line of Highway 61 to a point immediately opposite the first land of this farm which lies East of said Highway 61 in the Northeast corner of said property; thence East along a country road as far as said Hunter property extends; thence Northerly to the extreme

Northeast corner of said property; thence in a generally Westerly direction to the point of beginning along the Northern most boundary of said property.

"3. The boundary line between the East right of way line of the Railroad and the West right of way line of Highway 61 shall be straight and parallel to the North boundary line of said property, the exact location of said line is to be determined by Lyman Harrison so that said property line shall encompass and constitute a tract of land containing 248 acres. Reference is specifically made to an aerial photo bearing title Exhibit A and the signatures of Manuel Drumm and Jim Wallace on which in heavy red pencil are outlined the aforementioned described land, which is not intended as an exact legal description but as an attempt to describe on the aerial photo the division of the property hereinbefore set forth.

"4. It is agreed that all crop allotments from the Federal Government will be divided on same ratio as division of total acreage. By this it is meant that the 248 acres to go to Moore and Moore shall receive crop allotments in same ratio as the 248 acres is to the total acres of farm land.

"5. It is agreed that J. Handy Moore and William Moore will be entitled to the use of all existing drainage ditches now connected with and touching said property.

"s/ Jim Wallace
"s/ Manuel Drumm"

Mr. Wallace testified that Exhibit 2, the Memorandum hereinabove set out, contained the full agreement as to the division of the land. It may be noted that Exhibit 2, the award made by the parties' representatives, was dated September 12, 1961; further, that the southern boundary of the land allotted to the Moore brothers between the Frisco Railroad right of way on the west and Highway 61 on the east had not been established; further, that the southern boundary line, according to Section 3 of Exhibit 2, should be established so that the

northern portion of the farm, allotted to the Moore brothers, should contain 248 acres. It was provided that a survey establishing the south boundary was to be made by Lyman Harrison. Mrs. Rose and the Moore brothers were evidently satisfied with the division of the land and, as contemplated by Exhibit 2, Mrs. Rose entered into a "Farm Operating Contract" (on October 21, 1961) covering land referred to in the rental contract as "approximately 640 acres of the south part of Hunter Farm." The crop acreage was determined to be 614 acres. The land was farmed in 1962 under the terms of that contract. It was in evidence that the Moore brothers took possession of the northern portion of the farm immediately after Exhibit 2, the agreement as to the division of the land, was signed whereby the northern portion was allocated to them.

Lyman Harrison, who had prepared a survey in 1939 as shown by a blueprint, Exhibit A, was selected by Wallace and Drumm to establish the south boundary line of the land awarded to the Moore brothers. He received instructions from Wallace and Drumm which are noted in the following evidence:

"Q Will you tell the Court what those instructions were and by whom made?

"A Mr. Drumm told me that I was supposed to cut off so many acres off of the north end of the farm, all farm land, cultivatable land, totaling so many acres, I don't know the total on that offhand.

"Q What instructions, if any, did you receive from Jim Wallace?

"A Jim came up and asked me if I had been contacted by Mr. Drumm and if I was going to go to work and I told him I had, and I got practically the same instructions from him.

"Q The same instructions. Then did you go out on this land and start surveying?

"A  I did."

Lyman Harrison began a survey. One day while working on the project, Harrison was approached by one of the Moore brothers who was passing along the road and had noticed Harrison surveying. Mr. Moore went to Harrison and asked about the survey. What occurred is immaterial except that the result was that Harrison refused to do any more work on the survey and destroyed his notes. This occurred in late October or early November. It is noteworthy that it occurred after Mrs. Rose and the Moore brothers had taken possession of the land as roughly allotted to them. The only thing that had not been completed was the establishment of the southern boundary line of the Moore tract of land. Some effort was made to have Harrison complete his survey without success. Wallace thereupon notified the parties that he was resigning as an arbitrator and thereafter performed no act in connection with the partition.

After Harrison had refused to complete the survey, Drumm employed Alex C. Waters to make a survey and establish a boundary line at the south of the tract allotted to the Moore brothers. The survey, marked Exhibit 5, made in November, 1961, was introduced in evidence. It shows, and it was admitted, that the land allotted to the Moore brothers is traversed north to south by the Frisco Railroad tracks and U. S. Highway 61. There is also an east-west county road along the north boundary of the tract. Waters testified that in making the survey he used Exhibit A, the survey and blueprint made by Harrison in 1939, the aerial map, Exhibit 6, the contract, Exhibit 1, and Exhibit 2 which showed the apportionment of the land by Drumm and Wallace. Waters testified that he received oral instructions about making the survey from Drumm and the Moore brothers. He did not consult with Mrs. Rose. This survey made by Waters shows, and Waters so testified, that it encompasses 248 acres of *crop* land. He stated that in arriving at 248

acres he excluded all land occupied by the Frisco Railroad, the county road, U. S. Highway 61, as well as a small patch of brush land containing about 2 acres.

As noted above, the partition suit was filed on March 13, 1962. On March 22, 1962, Lyman Harrison made the following notation on Exhibit 5, the Waters survey: "This is to certify that I have checked the land represented by this plat, in the field and all computations and find there is 248.67 acres Crop land." Mr. Harrison testified that the Moore brothers came to him and informed him that they could get the partition of the land settled "if I could verify the acreage of Mr. Waters."

Harry G. Austin, father of plaintiff Mrs. Rose, was the only witness called by her. He testified that he was the author of the contract, Exhibit 1, providing for a division of the land. He stated that he had had much experience in arbitration agreements in the insurance business. This evidently accounts for the fact that Exhibit 1 was entitled "Arbitration Agreement for Partition of Sikeston Ridge Farm." He testified that in 1961 he urged Harrison to complete the survey and that he voiced no objection to the division of the farm as made by Wallace and Drumm before January 1, 1962. Austin testified that the valuation placed on the buildings by Wallace was excessive. In his opinion, the buildings on the south ¾ were not worth in excess of $15,000 for farm purposes. He also voiced objection to the survey made by Waters. He claimed that the Waters survey would give the Moore brothers 10 to 15 acres more than contemplated by the award of 248 acres made by Wallace and Drumm. In other words, he claimed that the Moore brothers would be allotted about 260 acres or more.

Mrs. Rose was called as a witness for the defendants. She stated that she was not satisfied with the division as made and evidenced by Exhibit 2. However, she stated that she made no objection to it during 1961

to either Wallace or the Moore brothers. Note her evidence:

"Q Did you tell the Moore brothers that it wasn't fair?

"A No.

"Q At that point were you willing to go along with it?

"A Yes, we would have gone along with it, if the agreement had been concluded.

"Q Now, you say if the agreement had been concluded, now, what part of the agreement, Mrs. Rose, was not concluded?

"A The survey was not completed by the surveyor the two arbitrators had selected."

Mrs. Rose admitted having received a detailed account of the division as made by Wallace and Drumm (designated as Exhibit 4). This dated September 21, 1961, reads as follows:

"BASIS OF COMPUTATIONS FOR DIVISION OF SIKESTON RIDGE FARM:

"862 actual acres

"1. Land worth average of $425.00 per acre
   north 1/4 worth $400.00 per acre
   middle 1/2 worth $425.00 per acre
   south 1/4 worth $450.00 per acre
"2. Value of all buildings on farm $37,700.00
   value of buildings on North 1/4 $3,000.00
   value of buildings on South 1/4 $9,450.00
   value of buildings on Middle 1/2 $25,250.00

---

| "N 1/4 to Moore Bros: | | | |
|---|---|---|---|
| "1/4 total acres | 215.5 | | |
| "Total value @ $425/acre | | $366,350.00 | |
| "1/4 total value | | 91,587.00 | |
| "1/4 total value + 400/acre | | | 229.0 acres |
| "value all buildings | | 37,700.00 | |
| "1/4 value all buildings | | 9,425.00 | |
| "value bldgs. on north 1/4 | | 3,000.00 | |
| "difference | | 6,425.00 | |
| "add acres for difference: | | | |
| "$6,425.00 / 400 | | | 16.0 acres |
| "TOTAL ACRES | | | 245.0 acres |

"ACTUAL ACRES AWARDED MOORE BROS (N1/4)  248.0 acres
"(by arbitration)

"s/ J M Wallace
"J. M. Wallace"

After receiving the above detailed account, Mrs. Rose on October 21, 1961, entered into a farm operating contract covering land allotted to her. In this contract, it is stated that the tract contained approximately 640 acres; further, that the total acreage in the Hunter Farm was 893.14 acres. The contract also specified the number of acres that were to be planted in various crops. Such acres totaled 614 including 21 acres

being occupied by buildings and lots. This 614 acres and the 248 acres allotted to the Moore brothers add up to 862 acres which is the figure used in Exhibit 4 as a basis for a division of the land.

In the survey made by Waters showing 248 acres, the ground occupied by buildings was not excluded. It is obvious that Wallace and Drumm apportioned the land to plaintiff and the Moore brothers on the basis of crop land. Exhibit 4, which Mrs. Rose received prior to the time she entered into a rental contract, plainly so shows.

Lyman Harrison who was first engaged to establish the southern boundary line certified that the Waters survey was correct.

■■ In the circumstances as above outlined, a court of equity was justified in decreeing specific performance. Gonzalez v. Gonzalez, 174 Cal. 588, 163 P. 993. The fact that the parties with full knowledge of the facts entered into possession of the land and made improvements in accordance with the division made by the arbitrators estopped the parties from pleading certain defenses against specific performance. 68 C.J.S. Partition § 12, page 17. See also 81 C.J.S. Specific Performance § 61, pp. 554–556. On page 556, under "Partition agreement," the following appears: "The taking of possession, by a party to an oral contract for the partition of land, of the tract or portion thereof allotted to him has been held to authorize the specific performance of the contract, on the ground that the relinquishment of the balance of the property is a sufficient consideration, * * *." Among cases there cited is Cave v. Wells, 319 Mo. 930, 5 S.W.2d 636.

■ We shall consider briefly the contentions made by Mrs. Rose claiming that the apportionment of the land between her and the Moore brothers should not be enforced. It is said that the arbitrators did not take an oath as required by Sec. 435.030, V.A.M.S. If an oath was required, the requirement was waived when the parties with knowledge of all the facts took possession of the land allotted to them. See cases cited under Note 6 of the above section.

■ Mrs. Rose says that the contract, Exhibit 1, and the allocation made by the arbitrators' Exhibit 2 are not binding because the surveyor who was selected to make a complete survey refused to do so. We do not agree. The parties agreed that the contract, Exhibit 1, should be binding on all parties. The arbitrators, by Exhibit 2, made a complete division of the land. It was only necessary to establish the south boundary which could be made certain by any surveyor by following the directions contained in Exhibit 2. Exhibit 4, furnished to Mrs. Rose, outlined in detail just what portion of the land was allotted to the parties. We rule that the division as made was binding on Mrs. Rose as well as on the Moore brothers. Such contracts have been upheld by the courts. Johnston v. Johnston, 37 Ga.App. 788, 141 S.E. 924; Gonzalez v. Gonzalez, 174 Cal. 588, 163 P. 993, l. c. 998 (10).

Mrs. Rose says that the resignation of Wallace as arbitrator had the effect of revoking the arbitration agreement; further, that the filing of the partition suit had that effect. Had these events occurred prior to the time that the arbitrators completed their work, such contentions might have had some merit. However, in this case, the arbitrators had fully completed making a division of the land. Nothing more was necessary to be done except for a surveyor to establish the dividing line which could be, and was, done in accordance with the directions contained in Exhibit 2. Mrs. Rose and the Moores so treated the partition as completed by taking possession of their respective portions. The resignation of Wallace after the division had been made did not affect the partition agreed upon by Wallace and Drumm. 68 C.J.S. Partition, § 12, pages 17, 18.

In the brief prepared for Mrs. Rose, it is said that the decree of the court as written leaves the title to that portion of the north

part of the tract underlying the roadway and the Frisco Railroad tracks undistributed; that the title thereto was not disposed of by the decree. As we read the description of the land awarded to the Moore brothers by the decree, it clearly included all of the Hunter Farm lying north of the township line and it is this land that is crossed by the railroad tracks and U. S. Highway 61. The tract north of this township line, as described in the decree, contains over 190 acres and included therein is the land underlying the roadways and the railroad tracks. That portion of the land south of the township line is bounded on the east by U. S. Highway 61 and on the west by the Frisco tracks. It is not traversed by either the roadway or the railroad tracks.

The concluding statement in the decree of the description of land allotted to the Moore brothers, "containing in all 248.00 acres more or less," is not accurate since it is evident that the total acreage allotted to them by the decree is more than 248 acres. Likewise, the acreage allotted to Mrs. Rose by the decree is more than 614 acres. It is stated in the decree that the total acreage of the Hunter Farm is 893.14 acres which clearly indicates that all of the land was included in the decree.

We have considered and reviewed the evidence fully and find that the decree of the trial court decreeing specific performance was proper and in accordance with justice and the law.

In view of the fact that the judgment on the first count is for respondents, it follows that the cost of the survey which was paid for by the Moore brothers should be shared by Mrs. Rose.

The judgment and decree of the trial court on both counts are hereby affirmed.

PER CURIAM.
The foregoing opinion by HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.