A. T. CASSTEVENS

*v.*

AMANDA CASSTEVENS *et al.*

*Opinion filed June 19, 1907.*

1. CLOUD ON TITLE—*one having an equitable fee may maintain bill to remove cloud.* A bill to remove a cloud from title is a proceeding in equity and one having an equitable fee will be regarded as the owner, and proof of such equitable title will support an allegation of ownership.

2. SAME—*a decree should not require defendants to make conveyance.* A decree in a proceeding to remove a cloud from complainant's title should not require the defendants to execute a deed for the land to the complainant.

3. EQUITY—*rule where a bill contains prayer for general and special relief.* Where a bill in equity contains a prayer for general relief in addition to the prayer for specific relief, the court may grant such relief under the general prayer as the allegations and proof demand, though the prayer for specific relief must be denied.

4. SAME—*when bill must be dismissed for want of equity.* A bill to compel the defendants to specifically perform an agreement to leave the partition of the estate to arbitrators and to quiet complainant's title by executing a deed to show that she owned a title in fee to the land should be dismissed for want of equity, where the complainant fails to prove any legal or equitable title to the land but only that she was given possession of the land under the award, the terms of which are not proven.

5. PARTITION—*when mutual agreement to divide land is not a sufficient consideration.* The mutual agreement of co-tenants to divide land is sufficient consideration where each party takes the proportion to which he is entitled under the law, but is not, of itself, sufficient consideration to support a division which gives to one having only a dower interest a title in fee to one-third thereof instead of a life estate in such portion.

6. SAME—*it is competent to show that dividing the land was the only consideration.* When partition is made by mutual deeds between co-tenants the deeds should be read and construed in the light of the circumstances attending their execution, and it is competent to show that the only purpose of the parties was to accomplish the partition and that there was no other consideration.

7. SAME—*decision of arbitrators selected to make partition is binding.* Where the widow and heirs agree, in writing, to leave the

division of the estate to disinterested persons selected by them, the decision of such persons, if not accompanied by such fraud or mistake as renders it voidable, is binding upon the parties who signed the agreement.

8. SPECIFIC PERFORMANCE—*contract must be clearly proven and be based upon valuable consideration.* Specific performance of an alleged contract to convey land will not be decreed unless the contract is clearly established by competent evidence, is clear and definite in its terms and based upon valuable consideration.

APPEAL from the Circuit Court of Cumberland county; the Hon. M. W. THOMPSON, Judge, presiding.

Lewis Casstevens died in Cumberland county August 15, 1895, intestate, leaving a widow, Amanda Casstevens, and their two sons, A. T. (Thomas) Casstevens and Walter Casstevens, both being adults. He was seized at the time of his death of about three hundred acres of farm lands, several town lots and some personal property. Some time thereafter his widow and two sons entered into an agreement reading as follows:

"We, the heirs of Lewis Casstevens, deceased, hereby agree to leave the division of the estate to (3) three disinterested persons to be selected by ourselves, and to peacefully abide their decision. The above selection must be made on or before Jan. 9, 1897.

AMANDA CASSTEVENS,<br>
A. T. CASSTEVENS,<br>
WALTER CASSTEVENS."

This instrument was duly acknowledged by the mother and two sons before a notary public. The three persons selected are sometimes in the record called arbitrators and sometimes commissioners. It appears they went upon the ground and decided that each of the sons should have as his separate share a fee simple title to one hundred acres of the farm land, and they also allotted to the widow one hundred acres of the farm land on which were located the house and buildings which at one time had been the old homestead. Each of the three took possession of the premises so allotted.

No question seems to be raised on this record as to the division of the personal property or town lots. The main question is whether the widow is entitled to her one hundred acres in fee or merely for the term of her life. The widow resided in town at the time of the division, and did not then, and does not now, claim any interest of homestead in the farm property. A. T. Casstevens then was, and is now, married to India Casstevens, who was one of the defendants in the court below and is here an appellee. She did not sign the agreement for the division of the premises.

Amanda Casstevens, the widow, filed her bill in the circuit court of Cumberland county October 13, 1906, to remove cloud on the title. The bill sets up substantially the above facts, and avers that appellant has no interest whatever in the land assigned to her, but that there is nothing of record in said county of Cumberland, nor is said complainant able to get anything of record, to show that said A. T. Casstevens does not still own, as one of the heirs of said Lewis Casstevens, an interest therein, and that the showing on the record that said A. T. Casstevens still has an interest in that one hundred acres is a cloud upon her title, which she asks to have removed, and that said A. T. Casstevens and wife, who are made parties defendant, may be required to deed the same to complainant, and in default that the master in chancery make such deed.

The defendants, A. T. Casstevens and India Casstevens, answered, admitting the facts as to the appointment of the three persons to divide the property, but claimed that the one hundred acres set off to the widow was, according to the decision of the three arbitrators or commissioners, to be taken by her only for her life.

The court, by its decree entered December 4, 1906, found that all the material allegations of the bill were true and that the record title of said A. T. Casstevens is a cloud upon the title of said Amanda Casstevens, and ordered that said A. T. Casstevens and his wife, within thirty days, or,

upon their failure, the master, execute a deed as prayed; that defendants be barred from all interest in said land. From this decree an appeal was taken by A. T. Casstevens to this court, Amanda and India Casstevens being named as appellees.

EDWARD C. & JAMES W. CRAIG, Jr., (BREWER & BREWER, and LYLE DECIUS, of counsel,) for appellant.

JOHN S. HALL, for appellee Amanda Casstevens.

Mr. JUSTICE CARTER delivered the opinion of the court:

Counsel for appellant insist that as appellee Amanda Casstevens has no legal title in fee to the lands in question she could not maintain her suit to quiet title, particularly as against a person having the record title. "A bill to set aside a cloud on title is a proceeding in equity, and one who holds an equitable fee will be treated as the owner, and such equitable title will support the allegation of ownership of the title." (*Glos* v. *Goodrich,* 175 Ill. 20; 2 Pomeroy's Eq. Rem. sec. 730.) If this proceeding be a bill to quiet title, then the decree should not have required, as it does, the conveyance by A. T. Casstevens and his wife of the land by deed to the complainant. (*Rucker* v. *Dooley,* 49 Ill. 377; *Pratt* v. *Kendig,* 128 id. 293; *Clay* v. *Hammond,* 199 id. 376.) This bill is more in the nature of a bill for specific performance than to remove a cloud on the title, but in addition to praying for specific relief it also contains a prayer for general relief. The rule is in such cases, that although the specific relief prayed for in the bill may be denied by the decree, yet under the general prayer such relief should be granted as it may be found, under the allegations of the bill and the proof in support thereof, the complainant is entitled to. (*Gibbs* v. *Davies,* 168 Ill. 205; *Shields* v. *Bush,* 189 id. 534.) Hence whether this be held to be a bill to quiet title or for specific performance, if the proof justifies it the court, under the allegations in the bill and the general

prayer for relief, should grant such relief as in equity the parties are entitled to.

The main point to be decided from the record is, what was the extent of the interest which the three persons chosen to divide the property decided should be given to the widow? Was it a fee or merely a life interest? There is nothing in the record to establish any agreement between the parties subsequent to the finding of these three arbitrators or commissioners directing the partition of the premises. The decision of these three men, duly appointed, if not accompanied by such fraud or mistake as would render it voidable, would be binding upon the parties who signed the agreement, as a common law submission to arbitration. (*Eisenmeyer* v. *Sauter,* 77 Ill. 515; *Phelps* v. *Dolan,* 75 id. 90; *Smith* v. *Douglass,* 16 id. 34; 2 Am. & Eng. Ency. of Law,—2d ed.—540.) The evidence as to what these arbitrators or commissioners actually decided in dividing the property is not clear. Two of the three are dead, and the surviving one, Newton Bassett, had moved out of the State and was not located until about the time of the trial. Appellant then made an affidavit for continuance to take the deposition of Bassett, and in the affidavit stated that the witness was residing in Oklahoma, and that he expected to prove, among other things, by Bassett, that he was one of the persons chosen to divide the premises, and that he and the other two commissioners, in pursuance of said article of agreement, went upon said land and assigned to said Amanda Casstevens, as and for her dower and homestead interest in said land, the land described in the bill of complaint; that she was not to be the owner of said land set off to her as a fee simple estate. On this affidavit being presented the court held that it set up sufficient grounds for continuance, and thereupon counsel for the appellee Amanda Casstevens admitted that if the said Bassett were present he would testify as set forth in the affidavit. Such admission having been made, the trial proceeded.

It appears from the evidence that three deeds were made out by a notary public, one M. A. Ewing, who was one of the witnesses called by appellee Amanda Casstevens. He stated that these deeds were made out at the request of the two sons and were taken to the house of the widow, and the two conveying the parts allotted to the sons were signed; that Walter Casstevens signed the deed to his mother's portion but did not acknowledge it, and that A. T. Casstevens refused to sign it. A document was introduced in evidence which he stated was the deed in question, it being satutory quit-claim in form, conveying from the two sons and the wife of A. T. Casstevens to the widow the one hundred acres in question, no mention being made of a life estate. It does not clearly appear from Mr. Ewing's testimony as to how much evidence this deed affords of the finding of the arbitrators or commissioners. He stated that he drew the deeds when the three arbitrators were present and that they compared the descriptions to see if they were right. However, later in his testimony, we find the following questions and answers:

Q. "You did not understand she had any fee simple in the matter?

A. "I did not consider it was any of my business.

Q. "Did you understand that she had any fee simple?,

A. "By the agreement I inferred she did.

Q. "You inferred she had a right to deed that away?

A. "Yes."

This would indicate a conclusion based on his own judgment as to the meaning and intent of the agreement, rather than a definite knowledge as to the findings of the arbitrators.

The widow, Amanda Casstevens, testified that she understood she was entitled, under the agreement, to one hundred acres in fee, but her testimony does not make it clear whether she was giving her recollection of what the arbitrators found her share to be or her general idea of what

she thought it should be. The same may be said as to Walter Casstevens' testimony. Appellant, A. T. Casstevens, testified on this point that he thought there were plats or a written report made by the commissioners, and that he never heard anything from the commissioners with reference to the land allotted to his mother otherwise than that she was to have a dower interest. The testimony tended to show that these commissioners or arbitrators made a written report of their findings, which was afterwards lost and could not be produced in evidence. With the exception of what it was admitted Mr. Bassett would testify to if present, no positive testimony was given by any of the witnesses as to the contents of their report or the substance of their findings. M. A. Ewing, Walter Casstevens and the mother all testified that they did not understand there was any talk about dower or homestead.

When partition is made by mutual deeds between the co-tenants, the deeds should be read and construed in the light of the circumstances attending their execution, in order to carry into effect the true intent of the parties; and it is competent to show that their only purpose was to accomplish the partition, and that no other consideration passed between the parties. (21 Am. & Eng. Ency. of Law,—2d ed.—1136.) When a voluntary partition takes place, each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his cotenant by this transfer so that either can be said to hold under the other. (*Berry* v. *Seawell,* 65 Fed. Rep. 746.) It is well established, as a general rule, that co-tenants may partition the property among themselves by mutual agreement, (21 Am. & Eng. Ency. of Law,—2d ed.—1131,) and that the agreement in writing for partition will have the same effect as an actual partition. *Lavalle* v. *Strobel,* 89 Ill. 370.

So far as these proceedings partake of the nature of specific performance the rules of equity invoked in such proceedings must be followed. Specific performance of the conveyance of land will not be decreed unless the contract is established by competent evidence, free from doubt or suspicion, clear and definite in terms and upon a valuable consideration. (*Wolfe* v. *Bradberry,* 140 Ill. 578.) Specific performance will not be decreed unless it is reasonable and equitable. (*Hatch* v. *Kizer,* 140 Ill. 583; *Montgomery Palace Stock Car Co.* v. *Stable Car Line,* 142 id. 315.) The enforcement of a contract for specific performance is within the sound discretion of the court, according to the circumstances of each case. (*Shovers* v. *Warrick,* 152 Ill. 355.) Equity will never enforce an executory agreement unless there was an actual valuable consideration. (3 Pomeroy's Eq. Jur. sec. 1293.) For the mere division of the undivided interests into several interests according to the proportions taken by each party under the law, the mutual agreement to divide was a sufficient consideration, but there was no sufficient consideration to support a division which would give the widow a fee simple title to one hundred acres instead of a life interest in one-third of three hundred acres.

It must be admitted that the meaning of the written contract in question is somewhat ambiguous. The oral testimony as to its meaning is conflicting. India Casstevens, the wife of A. T. Casstevens, could not be compelled to join in a conveyance when she was not a party to the agreement. (2 Pomeroy's Eq. Rem. sec. 834; *Humphrey* v. *Clement,* 44 Ill. 299; *Mix* v. *Baldwin,* 156 id. 313.) But as she has not prayed an appeal this question is not vital. *National Bank of Pontiac* v. *King,* 110 Ill. 254.

The evidence is uncontradicted that the agreement to submit the division of the land was made solely for the purpose of saving the expenses of court proceeding. Had the partition been made in court, Amanda Casstevens would not have obtained, under the law, a fee in the one hundred acres

of land.   She was not entitled to homestead, and, so far as this record discloses, a life interest in this one hundred acres of land fully equals, if it does not exceed, her dower interest in the entire three hundred acres.   Plainly, from the testimony, the parties may not have had, at the time of the division, a clear understanding of what their interests were. The quit-claim deed to the mother, signed by Walter Casstevens and never acknowledged, was left lying carelessly about for years without anything being done concerning it until these proceedings were started.   The record does not disclose why at this late date such proceedings were instituted.   We are not prepared to hold that she is precluded from obtaining the relief asked for, on the ground of *laches;* but this delay, if it indicates anything, tends to show that she did not have the clear understanding as to her rights in the premises that she now claims.

From the evidence in the record we are of the opinion that Amanda Casstevens did not show such title in herself as would warrant a decree clearing from the record the interest of A. T. Casstevens as a cloud upon her title, or a decree compelling A. T. Casstevens and his wife to convey to her their interest in said one hundred acres.   The burden of proof having been upon the complainant to establish her title, either legal or equitable, and she having failed to do so by such satisfactory or tangible proof as would justify either the special or general relief prayed for in the bill, we are of the opinion the trial court erred in not dismissing the bill for want of equity.   The decree of the circuit court will be reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*