(No. 19915.-

MORRIS CUTLER *et al. vs.* WILLIAM WEIBEL *et al.* Appellees.—(ESTHER CUTLER, Appellant.)

*Opinion filed February 21, 1930—Rehearing denied April 4, 1930.*

Samuel B. King, and Julius H. Gross, for appellant.

Samuel J. Andalman, for appellees.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal from the decree of the superior court of Cook county dismissing appellant's amended bill for specific performance of an alleged contract for the sale of real estate and granting the prayer of appellees' cross-bill removing the said alleged contract as a cloud on their title.

The original bill herein was filed on April 14, 1923, by Morris Cutler, since deceased, husband of appellant. It alleges that he, Morris Cutler, entered into a contract on March 21, 1922, with appellees for the sale to him of the real estate involved in this proceeding, located in Chicago, for the sum of $7250, $500 of which was paid at the time of the signing of the contract, $2750 to be paid at the time of the closing of the deal, and he, Morris Cutler, to assume a first mortgage on the premises of $4000. The bill alleges that the complainant has always been, and is now, ready, willing and able to complete the purchase, and on several occasions between March 21, 1922, and May 13 following, repeatedly demanded that defendants furnish to him an abstract of title or guarantee policy, which, however, defendants refused to do; that on May 13 a copy of an opinion of title was rendered by the Chicago Title and Trust Company and for the first time submitted to the complainant; that since that time he had made numerous de-

mands on the defendants to clean up the objections found in the opinion of title; that the defendants delayed the closing up of the matter under the pretense that they were trying to clear the title, and that this delay continued until the end of March, 1923, when defendants stated they would conclude the transaction if they received a higher price for the premises but refused to carry out the contract entered into on March 21, 1922. The bill alleges tender at different times on the part of complainant. The prayer of the original bill is that defendants be decreed to complete the contract entered into by them, and on failure to do so that the court direct one of its masters in chancery "to first remove the objections if it is possible so to do, and that the defendants pay for such services, and that the master in chancery convey the aforementioned real estate to your petitioner, * * * and that this honorable court will order the defendants to furnish complainant a complete abstract or a guarantee policy from the Chicago Title and Trust Company showing a complete and clear title in themselves, subject only to the $4000 incumbrance, as agreed upon, in accordance with the terms and provisions in said contract provided, and if the defendants shall fail to carry out the order of this court, that this honorable court direct one of its masters in chancery to procure such an abstract of title or guarantee policy showing the title in the defendants to the foregoing described real estate, and that he shall deduct the purchase price therefor, and that this complainant be reimbursed for all costs and expenditures which he was forced and shall be compelled to expend in order to compel defendants to carry out their contract, and for such other and further relief * * * in the premises as shall to your honors seem meet, * * * the defendants be ordered and directed to carry out the terms and provisions and to convey to your petitioner the aforementioned premises, with exception, only, of a $4000 first mortgage on the premises," etc.

Attached to the original bill was a copy of the alleged contract, a copy of which had been on June 8, 1922, filed in the recorder's office of Cook county by one Holland, attorney for Morris Cutler. This contract states that Morris Cutler and Esther Cutler, his wife, joint tenants, agree to purchase the property in question (describing it) for $7250. The contract contains no names of the holders of the title or of the person or persons agreeing to sell the premises at the price mentioned. The form of contract, which is the revised Real Estate Board form of sale contract commonly in use in the city of Chicago, declares that the transfer is to be made subject to three conditions: "(1) Existing leases expiring .........., the purchaser to be entitled to the rents from ..........; (2) all taxes and assessments levied after the year 19....; (3) any unpaid special taxes or special assessments levied for improvements not yet completed and to unpaid installments of special assessments which fall due after .........., levied for improvements completed." The contract then provides, "taxes to be prorated." It also recites that $500 as earnest money had been paid to Jordan & Co., to be held by them for the benefit of both parties, and, in case the contract is consummated, to apply the same, first, to the payment of the vendor's expenses, and second, to the payment of brokers' commissions according to the rate per cent established by the Real Estate Board, and the overplus, if any, to the vendor. It then provides that the further sum of $2750 and insurance premium were to be paid within five days after title has been examined and found good or accepted and a good and sufficient warranty deed conveying to the purchaser a good and merchantable title is ready for delivery. The balance is to be paid, "first mortgage of $4000 on or before three years, at the rate of six per cent." This contract carried but three signatures, those of Morris Cutler, William Weibel and Mrs. Lucinda Weibel. This bill was sworn to by Morris Cutler.

The defendants on May 8, 1923, filed a general and special demurrer giving seven special causes of demurrer, with nine special reasons why the contract attached to the bill of complaint was void for uncertainty and lack of mutuality. On the following day the defendants to the original bill filed a cross-bill against Morris Cutler, alleging that the contract as set forth in the original bill had been on June 8, 1922, recorded in the office of the recorder of deeds, together with an affidavit of claim to cloud the title of the cross-complainants. This affidavit, which was attached to the contract recorded, is as follows: "Morris Cutler, being first duly sworn, on his oath deposes and says that the appended document is a true and correct copy of a certain contract entered into by him and William Weibel and Lucinda Weibel with reference to the premises described therein. Affiant further states that he is making this affidavit for the purpose of giving notice to the world that he is able, ready and willing to perform all the provisions of said contract on his part to be performed." The affidavit was sworn to on the seventh of June, 1922, before one Joseph H. Landes, notary public.

The cross-bill filed by the Weibels also averred that the contract was void and unenforcible for the reasons set forth in the demurrer filed to the original bill, and sought the removal of it and the affidavit from the records as a cloud. On the day the cross-bill was filed an order was entered requiring Morris Cutler to answer same in ten days. He does not appear to have answered the cross-bill, and the demurrer to the original bill appears not to have been disposed of. On July 12, 1923, counsel for Morris Cutler secured an order granting leave to Elizabeth Cutler to appear as additional party complainant and to file an amended bill in ten days, and on that day an amended bill was filed by Morris Cutler and Esther Cutler, the appellant here. The allegations of the bill are similar to those of the original bill, but there is attached

to the amended bill a contract substantially different from that attached to the sworn bill of Morris Cutler and filed by him for record in the recorder's office. While the contract is on the same printed form, yet the objections to the first contract pointed out in the demurrer filed to Morris Cutler's original bill do not appear in the alleged contract filed with the amended bill. In the alleged contract last filed the names of William Weibel and Lucinda Weibel, his wife, appear as owners of the property and contracting vendors. The blanks in reference to the three conditions to which the transfer is made subject appear to have been filled. The balance of the payment, which in the purported contract originally filed appeared, "First mortgage of $4000 on or before three years, at the rate of six per cent," appears in the following language: "By executing and delivering note and trust deed for $4000, payable on or before three years after date hereof, with interest at the rate of six per cent per annum, payable semi-annually." This contract purports to be signed by Esther Cutler, Morris Cutler, William Weibel and Mrs. Lucinda Weibel. The prayer of the amended bill is, that the court "decree that the defendants, William Weibel and Lucinda Weibel, complete the contract so entered into and signed by them on the 21st day of March, A. D. 1922, with your petitioner, and on failure so to do that this honorable court direct one of its masters in chancery to first remove the objections if it is possible so to do, and that the defendants pay for such services; * * * that this honorable court will order the defendants to furnish complainants a complete abstract of title or a guarantee policy from the Chicago Title and Trust Company showing a complete and clear title in themselves, as agreed upon, in accordance with the terms and provisions in said contract provided, and, if the defendants shall fail to carry out the order of this court, that this honorable court direct one of its masters in chancery to procure such an abstract of title or guarantee policy showing the title in

the defendants to the foregoing described real estate at defendants' expense, and that complainants be reimbursed for all of the costs and expenditures which they were forced and shall be compelled to expend in order to compel the defendants to carry out their contract."

This amended bill, with the alleged contract thereto appended, was also sworn to by Morris Cutler. Upon the filing of the amended bill the defendants craved oyer of the instrument set forth in the amended bill of complaint and that the alleged contract be produced in open court and impounded. This motion was denied, and defendants filed their answer to the amended bill of complaint, denying that they signed the contract appended to the amended bill and alleging that the only instrument ever signed by them was between them and Morris Cutler alone, and was one attached to the original bill of complaint, and that if the signature of Esther Cutler now appears upon the said instrument it was fraudulently attached thereto subsequent to the filing of defendants' demurrer to the original bill. The answer also alleges that the purported original contract was recorded by Morris Cutler on June 8, 1922, together with an affidavit made by him stating that the attached contract was a true and correct copy of the contract entered into by the parties, and that therefore Morris Cutler is estopped to assert a different contract. A cross-bill was also filed to the amended bill, alleging the facts as hereinbefore referred to and praying that the alleged contract be removed as a cloud on the title of the cross-complainants.

The cause was referred to a master in chancery, who, though finding as a conclusion of fact that the contract attached to the amended bill of complaint was the true contract, nevertheless recommended, for reasons given in his report, that the bill be dismissed for want of equity and that the prayer of the cross-bill be granted. After the master's report was filed, and prior to the entry of the decree in this case, Morris Cutler died, and Esther Cutler sug-

gested his death on the record. The Weibels thereupon moved to dismiss the amended bill of complaint on the ground that the proceeding abated on the death of Morris Cutler. This motion was denied. Exceptions to the conclusions of fact appearing in the master's report were filed by the Weibels, and by Cutlers to the master's recommendations and to certain of his conclusions of fact and law. The exceptions of the Weibels were sustained and a decree entered dismissing the amended bill and granting the prayer of the cross-bill. Esther Cutler brings the cause here for review. Counsel for appellant here were not originally her counsel.

The abstract filed by appellant is not complete. Appellees have filed an additional abstract setting forth the matters omitted. The prayer to the original and to the amended bill hereinbefore set forth appear in the additional abstract.

Without passing on the question whether such a prayer could in any instance be granted by a court of equity, we come first to the question whether the instrument, a copy of which was filed by Morris Cutler as a part of his original bill and which was by him recorded in the office of the recorder of deeds of Cook county and sworn to by him as being a correct copy, or an instrument a copy of which is filed with the amended bill, is the actual instrument signed in this transaction. The original instrument was not produced. One Elmer Jordan, of the firm of Jordan & Co., real estate dealers who negotiated the deal, testified that he had had in his possession the original contract but that it had become lost and he was unable to find it; that it had been taken from the files in his office and that he did not know where it could be found. Evidence was introduced by the Cutlers to show that the purported copy of a contract attached to the amended bill of complaint was the correct copy. On the other hand, one Samuel Holland was called by appellees and testified that he was an attorney at law and that he had represented Morris

Cutler at the time of the transaction. At the commencement of his examination by counsel for appellees he claimed privilege on behalf of Morris Cutler, his client. He was evidently an unwilling witness for appellees. He testified that he prepared the affidavit and copy of contract filed by Cutler in the recorder's office; that the affidavit was signed by Morris Cutler and sworn to before Joseph H. Landes, a notary public; that witness saw the original document and from it copied the instrument filed with the affidavit in the recorder's office; that he got it from Cutler or an attorney named Lyons, who was representing Jordan & Co., the real estate firm; that the copy of the instrument as filed in the recorder's office was correct and that the original instrument contained but three signatures. He did not remember whose signatures they were. Joseph H. Landes testified that he was the notary public before whom Cutler swore to the affidavit filed in the recorder's office; that he compared the instrument filed in the recorder's office with the original instrument signed by Morris Cutler, and that the instrument filed in the recorder's office was a true and exact copy of the original instrument and that the original contract contained three signatures. Appellees each testified that the signature of Esther Cutler did not appear on the instrument when signed by them but that the signature of Morris Cutler alone appeared thereon. Esther Cutler testified that she signed the contract. Francis Geulien, associated with Jordan & Co., one Samuel Cutler, brother of Morris Cutler, and Elmer Jordan, of Jordan & Co., likewise testified.

We are of the opinion, however, that the testimony of Morris Cutler, as well as that of his associates and family, pertaining to the correctness of the purported contract as shown by the instrument filed with the amended bill of complaint as a copy, is seriously affected by the fact that prior to the filing of the original bill and the demurrer thereto, in which the insufficiencies of the contract alleged

in the original bill were set out, Morris Cutler filed of record his affidavit that the instrument, also filed therewith, was a correct copy of the contract. That instrument bore but three signatures and contained the insufficiencies hereinbefore set out. In addition thereto, the testimony of Holland and of Landes, both of whom were not witnesses friendly to appellees and who testified that the copy recorded was correctly made from the original received by them from Jordan & Co., completes the chain of circumstances which convince us that the instrument signed was the one a copy of which was recorded in the recorder's office and to the accuracy of which Morris Cutler swore both in his affidavit filed and in his original bill.

What, then, are the consequences flowing from this condition of the record? The contract signed by the parties contains no recital as to who were the owners, no provision as to when leases, if any, would expire, or when the vendee would be entitled to the rents, or as to what taxes and assessments were assumed by the purchaser, or as to the date from which taxes were to be prorated. While a deed ordinarily conveys a right to rentals from its date it does not give a right to rentals paid in advance. (*Nelson* v. *Joshel,* 305 Ill. 420.) This contract contains no stipulation as to the date of the first mortgage, and therefore no date on which such mortgage would mature. It was not signed by appellant. While it has been held that one for whose benefit an option or other unilateral contract is made, may, by accepting the contract and acting thereon, become bound thereby, (*Ullsperger* v. *Meyer,* 217 Ill. 262; *Forthman* v. *Deters,* 206 id. 159;) yet, in the absence of acts denoting such acceptance, such a contract, so far as the party not signing it is concerned, though named in the instrument, is lacking in mutuality. To constitute a valid executory contract for the sale of land both parties must be bound,—that is, the promises of the parties must be concurrent and obligatory, otherwise

the contract will bind neither. (*Short* v. *Kieffer,* 142 Ill. 258; *McKinley* v. *Watkins,* 13 id. 140.) While it is not necessary that the contract be signed by both parties, the assent of one not signing must be expressed by some overt act, and mere mental intention of such party to accept will not bind him, however deliberate that intention may have seemed. It must appear that the contract has been accepted and adopted as his own by the party to whom an offer of sale has been made before the obligations of the contract will become mutual and binding on the parties. (*Clark* v. *Potts,* 255 Ill. 183; *Sellers* v. *Greer,* 172 id. 549; *Vogel* v. *Pekoc,* 157 id. 339; *Sutherland* v. *Parkins,* 75 id. 338; *Waggeman* v. *Bracken,* 52 id. 468.) In this case the record is barren of any overt act on the part of appellant tending to show that she accepted and chose to be bound by the contract attached to the original bill, or by any contract, until the filing of the amended bill setting out a different contract. The record shows that negotiations and demands were made by Morris Cutler in his own behalf, and that in his affidavit filed of record, and his original bill sworn to, he, alone, claims to be the purchaser. While the name of appellant appears in the body of the contract as agreeing to purchase, she does not sign it. In the absence of some overt act on her part she was not bound thereby, and the contract was wanting in mutuality.

The instrument attached to the amended bill of complaint not being a correct copy of the contract between the parties, it follows that it does not afford a basis for the relief sought. It is fundamental that one who seeks specific performance of a contract must establish by competent evidence free from doubt or suspicion that the contract sued on is the contract between the parties. (*Cassteven's* v. *Casstevens,* 227 Ill. 547; *Wolfe* v. *Bradberry,* 140 id. 578.) Specific performance of a contract for the sale of real estate will not be enforced unless the terms are clear, certain and unambiguous and so admitted by the pleading or

proved with a reasonable degree of certainty by the evidence. *Brach* v. *Matteson,* 298 Ill. 387; *McKennan* v. *Mickelberry,* 242 id. 117.

Other questions arise on the record, but as our conclusions as to those discussed are determinative of the rights of the parties herein it is not necessary to consider others.

The superior court did not err in dismissing the amended bill and in granting the prayer of the cross-bill, and its decree will be affirmed.

*Decree affirmed.*