**BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES v. NORFOLK SOUTHERN RY. CO.**

No. 5248.

Circuit Court of Appeals, Fourth Circuit.

July 24, 1944.

Willard H. McEwen, of Toledo, Ohio (I. M. Bailey, of Raleigh, N. C., Frank L. Mulholland and Clarence M. Mulholland, both of Toledo, Ohio, Bailey, Holding, Lassiter & Wyatt, of Raleigh, N. C., and Mulholland, Robie & McEwen, of Toledo, Ohio, on the brief), for appellant.

Robert N. Simms and Robert N. Simms, Jr., both of Raleigh, N. C., for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of North Carolina.

The facts involved are largely undisputed. A controversy arose between the Norfolk Southern Railway Company, the employer (hereinafter referred to as the Railroad), and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, representative of the employees (hereinafter called the Brotherhood), as to the employment conditions, under an existing agreement, of certain employees of the Railroad represented by the Brotherhood. The Brotherhood contended that the existing agreement should be modified to provide payment for overtime work in excess of eight hours per day at the rate of time and one-half for such overtime. The railroad was willing to grant such a rate for time spent in excess of ten hours per day, but not for the ninth and tenth hours. Unable to adjust their differences in direct negotiations, or through mediation on the part of the National Mediation Board, the parties agreed to submit the dispute to arbitration.

The Railway Labor Act, 45 U.S.C.A. § 158 (hereinafter called the Act), provides that an agreement to arbitrate under the Act shall be in writing, and that, among other things, it:

"(g) Shall stipulate that the signatures of a majority of said board of arbitration affixed to their award shall be competent to constitute a valid and binding award; * * *"

"(i) Shall fix a period from the beginning of the hearings within which the said board shall make and file its award: Provided, That the parties may agree at any time upon an extension of this period; * * *"

The arbitration agreement was executed on October 13, 1942, and in conformity with the provisions of the Act, provided in part as follows:

"Ninth: The Board shall make and file its award prior to the expiration of the period of fifteen (15) days from the date on which the Board begins its hearings, but the parties hereto may agree, at any time prior to the making of such award, upon an extension of such period (whether or not previously extended)."

A Board of Arbitration (hereinafter called the Board), consisting of L. W. Reigel (chosen by the Brotherhood), J. C. B. Ehringhaus (chosen by the Railroad), and Matthew P. Andrews (appointed by the National Mediation Board), was duly selected, and as so constituted, convened at Raleigh, North Carolina, on December 28, 1942, with Andrews sitting as chairman.

After hearings held on December 28 and 29, 1942, an informal vote was taken. By the majority votes of Reigel and Andrews, the employees were to be granted the time and one-half rate for the ninth and tenth hours. The award was not reduced to writing at that time, so it was agreed that Andrews and Reigel would prepare a written statement of the award, and that Ehringhaus would prepare a dissent. The Board then adjourned and never reassembled.

On January 4, 1943, Andrews sent a draft of a written award, prepared by him and bearing his signature only, to Ehringhaus. This draft embodied the majority decision of the Board as to overtime pay and as to its effective date. It contained, however, as its fifth paragraph, the following provision:

"As the representative of the public, whose interests transcend those of either party, the chairman recommends that should the application of this award place such a burden upon the carrier as to cause curtailment of the offices it performs for the public which it serves the award should be abrogated by mutual agreement."

Upon receipt of this document, Ehringhaus prepared and filed his dissenting opin-

ion. Reigel, unable to concur in paragraph 5 of the Andrews draft, also prepared a dissent.

Subsequently, after further correspondence between the arbitrators, paragraph 5 was deleted from the Andrews draft. As so altered, the award was signed by Andrews and Reigel (there was some controversy as to the proper signing of this draft by Reigel, but as the question was not before the District Court we shall not consider it here), and on March 29, 1943, the award was filed with the Clerk of the United States District Court by the National Mediation Board.

On February 23, 1943, prior to the filing of the Andrews draft, the Railroad, acting through its General Superintendent, filed in the office of the Clerk of the same Court its petition to impeach and vacate any attempted award of the Board. The matter was heard by the District Court on August 2, 1943. Judgment, impeaching the award, was entered for the Railroad and the Brotherhood has duly appealed.

At the outset of any consideration of this controversy, we are faced with the general purposes of the Act itself. One purpose that we deem important here is thus set out, 45 U.S.C.A. § 151a(4):

"(4) To provide for the *prompt* and *orderly* settlement of all disputes concerning rates of pay, rules, or working conditions." (Italics ours.)

Counsel for the Brotherhood contend that orderliness is more important here than promptness. We fail to appreciate how delay will promote orderliness in such a case, and we see little merit in this contention.

It is not the province of the courts to lay undue emphasis on a particular word in a statute when Congress, which enacted the legislation, failed to do so. Had the word "prompt" been intended to hold no significance, it would have been an easy matter for Congress to have deleted it entirely.

We must assume that Congress legislated here in the light of the common law. In several instances, Congress made express departures from rules of arbitration established by the common law. Arbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long ruled that there must be strict adherence to the essential terms of the agreement to arbitrate.

Time is of the essence in arbitration at common law, and in the absence of express words by Congress, we cannot assume an intent to overrule this well established principle. Moreover, the statute is clear in its requirement that a time must be set out in the arbitration agreement, within which the award must be made and filed. Further, it is highly persuasive that Congress intended that the time so agreed upon should be controlling, else no provision for an extension of the time need have been included. The provision requiring a time limit to be set forth in the written agreement of the parties would seem to be mandatory. Atchison T. & S. F. Ry. v. Brotherhood, etc., 7 Cir., 26 F.2d 413, 419. It would hardly be proper to presume that while it was mandatory that the limitation in time appear in the agreement, it was directory merely in its requirement that the award be so made and filed.

Ordinarily an award need not be returned to court, Fuerst v. Eichberger, 224 Ala. 31, 138 So. 409, but if it is so required by the submission or by statute, compliance with the terms of the submission or statute is essential. Gonzalez v. Gonzalez, 174 Cal. 588, 163 P. 993; James v. Southern Lumber Co., 153 Mass. 361, 26 N.E. 995. Here, the agreement to arbitrate, executed in conformity with the statute, required that the award be certified and filed within 15 days from the date of the beginning of the hearings. In the absence of an extension, January 12, 1943, was the deadline for filing. Notwithstanding the fact that provisions for extending this time were included in the agreement and in the Act, no action was taken by either party so to extend the time, least of all the Brotherhood. Dissent among the ranks of the arbitrators voting in favor of the Brotherhood was primarily the cause of the delay.

The question of compliance with the terms of a somewhat similar agreement was before this Court in Atlantic Coast Line Ry. v. Pope, 4 Cir., 119 F.2d 39. This Court there held that a sixty day limitation on time for appeal from an adverse decision was valid and binding.

This petition to impeach and vacate was brought under the authority of 45 U.S.C.A. § 159, Third. The Act there provides:

"Third. Such petition for the impeachment or contesting of any award so filed shall be entertained by the court only on one or more of the following grounds:

"(a) That the award plainly does not conform to the substantive requirements laid down by this chapter for such awards, or that the proceedings were not substantially in conformity with this chapter; * * *

"(c) That a member of the board of arbitration rendering the award was guilty of fraud or corruption; or that a party to the arbitration practiced fraud or corruption which fraud or corruption affected the result of the arbitration: Provided, however, That no court shall entertain any such petition on the ground that an award is invalid for uncertainty; in such case the proper remedy shall be a submission of such award to a reconvened board, or subcommittee thereof, for interpretation, as provided by this chapter: Provided further, That an award contested as herein provided shall be construed liberally by the court, with a view to favoring its validity, and that no award shall be set aside for trivial irregularity or clerical error, going only to form and not to substance."

The Brotherhood strenuously urges that the tardy filing of the award in this case was only a "trivial irregularity" and did not go to the substance of the award. Even if we assume, arguendo, that this were true in regard to the award itself, we see no "substantial conformity", in these proceedings, to the requirements of the agreement and the Act.

The Brotherhood invokes the rule that awards should be liberally construed. The Act, § 9, Third, 45 U.S.C.A. § 159, provides:

"An award contested as herein provided shall be construed liberally by the court, with a view to favoring its validity, and that no award shall be set aside for trivial irregularity or clerical error, going only to form and not to substance."

The Railroad is not here objecting to the construction of an award. The very existence and the innate validity of the award itself are being attacked. And the errors assigned by the Railroad, we think, are not merely trivial or clerical, they are not formal but very substantial in the clearest meaning of that term.

■ We conclude that there was in fact no valid award made in this case. Mere decision on the part of the arbitrators, until certified and filed as required by the agreement, constituted no award. When the arbitrators failed to comply with the essential terms of the agreement on which their authority—indeed, their very existence as arbitrators was grounded—and the time passed for the filing of the award, that body became functus officio. Any attempt at making an award thereafter was null and void.

The Brotherhood relies, in support of its argument, on Atchison, T. & S. F. Ry. v. Brotherhood, 7 Cir., 26 F.2d 413. We see no aid to its cause in that decision. There, the Board reconvened after adjournment; here, the Board never reassembled. There the award was eventually filed within the time stated in the agreement; here, at the expiration of this time, no agreement had even been reached by the arbitrators, who were still squabbling over the mooted clause 5.

The very words of the majority opinion in Atchison, T. & S. F. Ry. v. Brotherhood, supra, refute the contentions of the Brotherhood here. Thus, Circuit Judge Evans said, 26 F.2d at page 419:

"While not stated in so many words, it would seem that there was imposed on the arbitrators the obligation to stay by their task until an award was made or *until lapse of time had terminated the arbitration.*" (Italics ours.)

■ It is rather striking that Congress, in the Act, provided one, and only one, method of extending the time within which the award must be filed—the agreement of the parties to the arbitration. This provision, we think, denies any such power to the arbitrators. Expressio unius est exclusio alterius. Here the arbitrators made no order extending the agreed time; they (with the exception of Ehringhaus) were simply guilty of inexcusable delay. And the award was filed by the arbitrators with the National Mediation Board, which filed the award in the District Court, where it should originally have been filed by the arbitrators.

The case becomes a simple one, if it be remembered that the award of the arbitrators is binding only if reduced to writing and filed, as required both by the Railway Labor Act and the arbitration agreement. It can be signed by a majority only; but, under the requirements of the act and of the agreement, it must be filed within the period fixed unless the parties extend that period. The purpose of the provision for filing within a time certain is obvious; if the arbitrators fail to make an award within that time, they pass out of the pic-

ture unless the parties agree to extend the time and the way is left clear for the designation of new arbitrators. Were this not so, settlement of disputes could be greatly delayed by mere failure on the part of the arbitrators to act.

It is to be noted that the case here is not one where there was mere delay in filing an award agreed upon within the time fixed. Without expressing an opinion as to the rule to be applied in such a case, it is clear that it is readily distinguishable from the case at bar. Here there was no final agreement even by a majority until long after the time fixed by the agreement had expired. The award to be binding had to be in writing. In reducing it to writing Andrews inserted something to which Reigel had not agreed. Whether this insertion had any importance or not, Reigel was not willing for the award to be filed so long as the insertion was insisted on. When the time limited for the filing of the award expired, there was no agreement by a majority as to the award to be filed. Not until sometime later did Andrews agree to withdraw from the award the insertion to which Reigel objected. At that time, the arbitrators had no power to act. Whatever might be said as to overlooking a mere failure to file within time an award which had been unequivocally agreed upon and from which the majority had never deviated, the court cannot overlook the failure within the time limited to agree upon the written award to be filed, as was the case here, without disregarding the provisions of the statute as well as of the agreement of the parties, and without laying down a rule which will greatly hinder and delay future arbitration under the act.

The judgment of the District Court is affirmed.

Affirmed.