**ORDER OF RAILWAY CONDUCTORS & BRAKEMEN and Brotherhood of Railway Trainmen, Plaintiffs,**

**v.**

**The CLINCHFIELD RAILROAD COMPANY, Defendant.**

**Civ. A. No. 2100.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Nov. 10, 1967.

---

John S. McLellan, Kingsport, Tenn., for plaintiffs.

Ferdinand Powell, Jr., Johnson City, Tenn., A. K. McIntyre, Erwin, Tenn., Gen. Solicitor for Clinchfield Railroad Co., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The jurisdiction of this Court is sought to be invoked by the plaintiffs-union under 28 U.S.C. §§ 1331 and 1337 for the purpose of impeaching and contesting an award of an arbitration board of the National Mediation Board, rendered on May 3, 1967, and for a declaratory judgment, 28 U.S.C. §§ 2201–2202. At the pretrial conference of August 11, 1967 herein, the Court was of the opinion that there could be a disposition of this action on the bases of proper motions filed by the respective parties. The defendant interposed a motion to dismiss the complaint, on the ground that this Court lacks jurisdiction under 28 U.S.C. §§ 1331 or 1337 or 2201–2202 or under 45 U.S.C. §§ 159, Third, and further because this action does not arise under the Railway Labor Act, 45 U.S.C. § 151 et seq. The plaintiffs-union filed no motion.

The facts essential to a disposition are undisputed, viz.: The respective plaintiffs-union and the defendant railroad entered into separate bargaining agreements, both which were in effect in 1965. Article 7 of each of these agreements is essentially the same and is concerned with the pooling by the defendant railroad of its cabooses.

By § (a) of that article, the contracting parties adopted procedures, as set forth in §§ (b) and (c) thereof, governing the conduct of the parties in the event the defendant railroad wished to invoke such pooling plan. Subsection (1) of § (c) describes the method by which the contracting parties shall " * * * endeavor to agree upon any facilities that should be furnished [by the railroad] to provide accommodations substantially equivalent to those formerly available on the cabooses and used by the employees [of the railroad] and on appropriate ar-

rangements for [the railroad's] supplying and servicing such pooled cabooses."

The railroad sought to institute the pooling system adverted to at its yards in Erwin, Tennessee. A controversy arose within the jurisdiction of this Court, and the contracting parties conferred in accordance with Article 7, § (c) (1) on May 29, 1965 but were unable to agree on the facilities, accommodations and arrangements appertaining to the pooling.

The carrier then invoked the services of the National Mediation Board, agreeably with Article 7, § (c) (2), on June 1, 1965. A mediator of that Board undertook to inspire an amicable settlement of the issue between and among the contracting parties. The Board declared on September 24, 1965 that the best efforts of its mediator to bring about an amicable settlement of the issue through mediation had been unsuccessful.

Article 7, § (c) (3) provides as follows:

> " * * * If mediation fails, the parties agree that the dispute shall be submitted to arbitration under the Railway Labor Act, as amended. * * * "

Thus, " * * * The arbitration procedure to be followed was that prescribed in [the] agreement[s] * * * " executed between the carrier and the respective plaintiffs-union. Batts v. Louisville and Nashville Railroad Company, C.A. 6th (1963), 316 F.2d 22, 26, 27 [2]. Obviously, those agreements prescribed that, where, as here, negotiations of the parties for a settlement of this particular dispute were unsuccessful and mediation had failed, the controversy would " * * * be submitted to arbitration under the Railway Labor Act, as amended. * * * "

Arbitration under the Railway Labor Act is by submission of the controversy to " * * * a board of three (or, if the parties to the controversy so stipulate, of six) persons· * * *." 45 U.S.C. § 157, First. The board of arbitration, under the Act, is required by 45 U.S.C. § 157, Third (f) to certify and transmit the original copy of its award, together with certain other documents, to the clerk of the district court of the United States for the district wherein the controversy arose or the arbitration is entered into, to be filed in said clerk's office. See also 45 U.S.C. § 159, First. The award becomes conclusive on the parties, unless within a specified period, a petition to impeach the award on one or more certain grounds is filed in the clerk's office of the court in which the award has been made. 45 U.S.C. § 159, Second. Such court is authorized and empowered to entertain a petition for the impeaching or contesting of such award if, inter alia, one of the grounds assigned is that the award does not conform to the stipulations of the agreement to arbitrate. 45 U.S.C. § 159, Third, (b).

The aforementioned controversy of these parties was submitted to arbitration at Erwin, Tennessee, within this District, to a board of five persons, comprised of two representatives of the carrier, one representative of the plaintiff Order of Railway Conductors, one representative of the plaintiff Brotherhood of Railroad Trainmen and Brakemen, and a neutral member thereof, selected by the National Mediation Board.[1] Such board certified and transmitted the original copy of its award and the required documents to the clerk of this Court, and same were filed by the clerk on May 3, 1967, and docketed as miscellaneous docket no. 12.[2] Within the period specified by 45 U.S.C. § 159, Second, the plaintiffs-union filed their petition to impeach and contest the award on the ground, inter alia, that the award does not conform to the stipulations of the re-

---

[1]. The Court has considered and rejected the strained concept that there were in actuality *two* boards of arbitration considering the same dispute under two separate agreements. with the neutral person serving concurrently as the third member of each of the two boards of three persons.

[2]. This Court takes judicial notice of these, its own records, in the instant consideration.

spective agreements of the parties litigant to arbitrate. 45 U.S.C. § 159, Third, (b).

■■ This Court is ever mindful of the clearly established national policy to encourage the use of arbitration. Rhine v. Union Carbide Corporation, C.A.6th (1965), 343 F.2d 12, 16 [12]. When the judiciary undertakes to determine the merits of a labor dispute under the guise of interpreting the procedures in collective bargaining agreements, " * * * it usurps a function which under that regime is entrusted to the arbitration tribunal. * * * " United Steelworkers of America v. American Mfg. Co. (1960), 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed. 2d 1403, 1407 (headnote 7). This Court pretermits all consideration of the merits of the dispute of the parties, but, " * * * the courts have long ruled that there must be strict adherence to the essential terms of the agreement to arbitrate. * * * " Brotherhood of R. and S. Cl., etc. v. Norfolk So. Ry. Co., C.A.4th (1944), 143 F.2d 1015, 1017 [3], 154 A.L.R. 1385; McCormick v. Gray (1851), 13 How. 26, 37–38, 14 L.Ed. 36, 40–41; see also 5 Am. Jur.2d 540, Arbitration and Award, § 26.

■ The contracting parties themselves invoked, with a specific condition precedent, the statutory arbitration procedures of the Railway Labor Act. " * * * The Court, as in the case of all agreements, must give effect to the intent of the parties as evidenced by the agreement[s] [themselves] which will be liberally construed to that end. The Court further observes that although an arbitration agreement has the formal aspects of a contract, it nevertheless, by its very nature, assumes the absence of an agreement between the parties,[3] other than the basic agreement on the mode of settlement. Arbitration is, then, a method, a means, a procedure, rather than an agreement. * * * " Arlington Towers Land Corp. v. John McShain, Inc.,

D.C.D.C. (1957), 150 F.Supp. 904, 923 [3].

When private negotiations and mediation both failed, this issue became governed by the Railway Labor Act, and the failure of the parties to comply with the procedure set forth in 45 U.S.C. § 157, First, resulted in proceedings which did not " * * * supply the foundation for a valid arbitration and award * * * ", 5 Am.Jur.2d 539–540, Arbitration and Award, § 25. The terms of the submission of this controversy to arbitration were relevant portions of the parties' agreements, and where the matters which were determined by the board were not within the terms of the submission, i. e., within the arbitration provisions of the contracts, the arbitrators " * * * exceed[ed] their jurisdiction, and their award may be set aside * * " in this proceeding. Texoma Natural Gas Co. v. Oil Workers I. U., etc., D.C.Tex. (1943), 58 F.Supp. 132, 146–147 [14], affirmed C.A. 5th (1944), 146 F.2d 62, certiorari denied (1945), 324 U.S. 872, 65 S.Ct. 1017, 89 L.Ed. 1426, rehearing denied (1945), 325 U.S. 893, 65 S.Ct. 1183, 89 L.Ed. 2004.

■ This Court is clothed with original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. 28 U.S.C. § 1337. The Railway Labor Act, 45 U.S.C. § 151 et seq. is an Act of Congress regulating commerce. 45 U.S.C. §§ 151, First, Fourth and Fifth, 151a. The plaintiffs-union allege that this action or proceeding is brought particularly under 45 U.S.C. § 159, Third. This properly invokes the jurisdiction of this Court, under all the circumstances, under 28 U.S.C. § 1337. See Felter v. Southern Pacific Co. (1959), 359 U.S. 326, 329, 79 S.Ct. 847, 3 L.Ed.2d 854, 858 (headnote 3). The defendant's motion of September 5, 1967 to dismiss this action or proceeding for want of jurisdiction, therefore, hereby is

Denied.

---

3. As to the absence of agreement within an agreement to arbitrate, cf. Local Union No. 988, Etc. v. B. & T. Metals Co., C.A. 6th (1963), 315 F.2d 432, 436 [2], and cases there cited and quoted from.

**326**

It appearing to the Court that the provisions of 45 U.S.C. § 157, First, with reference to the composition of the membership of the board of arbitration under which the parties litigant agreed to submit this controversy to arbitration, constitute essential terms of their agreement to arbitrate, Brotherhood of R. and S. Cl., etc. v. Norfolk So. Ry. Co., supra; McCormick v. Gray, supra; 5 Am.Jur. 2d, supra, at 540; and that there was not strict adherence to such essential terms of the agreements to arbitrate in this instance, the Court will now entertain a motion for a summary judgment on this point from the plaintiffs-union.